EMILIO RIVERA AYALA, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 1532. Argued July 14, 1943.—Decided September 23, 1943.

*H. S. McConell* and *R. Díaz Collazo* for petitioner. *M. Rodríguez Ramos, Acting Attorney General,* and *Fernando B. Fornaris, Assistant Attorney General,* for respondent.

M<small>R</small>. J<small>USTICE</small> T<small>ODD</small>, J<small>R</small>., delivered the opinion of the court.

The petitioner on his own behalf and claiming to represent more than one thousand persons, all of them employees of the Government of the United States of America in Puerto Rico, prayed the District Court of San Juan for a writ of *injunction* prohibiting the defendant, as Treasurer of Puerto Rico, from putting into effect Act No. 29 approved on December 7, 1942 (Spec. Sess. Laws, p. 160), which establishes the so-called "Victory Tax." In the prayer of the petition for *injunction* it was further prayed that a judgment be entered declaring (*a*) that the said Act is void as having been approved in violation of §2. of the Organic Act of Puerto Rico and (*b*) that The People of Puerto Rico has no power to levy any tax on the salary paid by the Government of the United States to plaintiff and other federal employees because it has not asked the consent of Congress to that effect. The lower court sustained a demurrer interposed by the defendant and dismissed the petition. Since the matter involved is a question of general public interest we issued a writ of *certiorari* under Act No. 32 approved May 3, 1943 [1] to review the procedure of the lower court.

---

[1] "Section 1.—A new section, to be numbered Section 671–A, is hereby added to the Code of Civil Procedure of Puerto Rico, approved March 10, 1904 (Edition 1933), immediately after Section 671 thereof, to read as follows:

" 'Section 671–A.—Notwithstanding the provisions of Section 670, the Supreme Court of Puerto Rico in its discretion may issue a writ of certiorari to review an order or sentence of a district court when the public interest will

■ Before going into the case on its merits, it is desirable to make it clear that while we consider that the lower court did not err in holding that the petitioner had available an adequate remedy at law—to pay under protest and go to the Tax Court—which rendered improper the granting of the injunction requested, notwithstanding that, as both in the hearing and in his written brief the defendant waived all technical matters in view of the desirability of having the constitutional questions presented decided on their merits by this court, we are of the opinion that the prompt determination of the matters presented will be in the public interest, which justifies that we proceed to decide them under §671-A cited in the margin, *supra*.

■ The petitioner complains because the lower court did not enter the declaratory judgment prayed for and limited itself to dismissing the bill for injunction. While it is true that the district court did not make a specific satement in its judgment as to the declaratory remedy prayed for, it is also true that in the course of the opinion rendered in support thereof, it entered into the consideration and decision of at least one of the constitutional questions presented. Upon dismissing the complaint the lower court in fact held that the statute attacked is valid. In a similar situation, the Supreme Court of the United States in the recent case of *Great Lakes Dredge & Dock Company* v. *Huffman*, 319 U. S. 293 (May 24, 1943), decided as follows: "The formal judgment ordered dismissal of the suit, but it is to be interpreted in the light of the court's opinion, findings, and conclusions of law. (Citing cases.) So interpreted it rests

be promoted by prompt settlement of the question presented for review. This method of review shall apply both to questions of adjective law and to questions of substantive law. The writ may be issued notwithstanding the fact that the order or sentence involved is reviewable on appeal to the Supreme Court in ordinary course, and may be issued at any stage of the proceedings, either before or after final judgment in the district court.' ''

wholly on the court's declaration that the statute applied to petitioners is constitutional; it is thus in effect a declaratory judgment.''

■ The first question raised by the petitioner is that the salaries received by the employees of the Federal Government are not subject to the payment of the Victory Tax provided by §1 of Act No. 29 of December 7, 1942,[2] because Congress has not granted such power to the Insular Government, and he argues that neither the decision in the case of *Graves* v. *N. Y. ex rel. O'Keefe,* 306 U. S. 466 (1939), nor §4 of the Public Salary Tax Act of 1939,[3] increased the said power in any way and that the present case must be gov-

---

[2] ''Section 1.—A tax of five (5) per cent upon the gross income of every individual, in excess of fifteen dollars and five cents ($15.05) a week, for interest, rents, salaries, wages, day wages, fees, donations, compensations, remunerations, commissions, premiums, employments, dividends, benefits in partnerships, whether civil or commercial, annuities, or other determinable income, when not obtained from transactions in connection with contracts of purchase and sale in which those who received it may have acted as contracting parties, is hereby levied, and shall be collected and paid in addition to any other tax levied by the Income Tax Act of 1924, and up to six (6) months after the cessation of hostilities between the United States of America and Germany, Italiy, and Japan. Without this being subject to interpretation as a limitation of the term 'salaries', the same refers also to every kind of salaries paid in Puerto Rico by the Government of the United States of America. In the case of rents, there shall be deducted also as an exception any amount actually paid as interest for liens on the property producing the rents. Of the income subject to taxation by this Act there shall be deducted also the amount received as compensation for labor accidents. By income shall be understood every sum of money actually received by the taxpayer, or deposited or assigned in his favor or for his benefit. The word payment as used in this Act shall have also that same meaning.

''The tax levied by this Act shall be collected and paid from and after January 1, 1943.

''This additional income tax shall be known as 'The Victory Tax'. It may be so cited and shall be so cited in the body of this Act.''

[3] ''Section 4.—The United States hereby consents to the taxation of compensation, received after December 31, 1938, for personal service as an officer or employee of the United States, any Territory or posssesions or political subdivision thereof, the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, by any duly constituted taxing authority having jurisdiction to tax such compensation, if such taxation does not discriminate against such officer or employee because of the source of such compensation.''

erned by the decision in *Domenech* v. *National City Bank*, 294 U. S. 199 (1935). Petitioner is wrong.

The case of *Domenech, supra,* did nothing more than apply the well-known rule established in *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819), that the Federal Government as well as its agencies and instrumentalities are exempt from all kinds of state taxation and it decided that:

" . . . Puerto Rico, an island possession, like a territory, is an agency of the federal government, having no independent sovereignty comparable to that of a state in virtue of which taxes may be levied. Authority to tax must be derived from the United States. But like a state, though for a different reason, such an agency may not tax a federal instrumentality. A state, though a sovereign, is precluded from so doing because the Constitution requires that there be no interference by a state with the powers granted to the federal government. A territory or a possession may not do so because the dependency may not tax its sovereign. True the Congress may consent to such taxation; but the grant to the Island of a general power to tax should not be construed as a consent. Nothing less than an act of Congress clearly and explicitly conferring the privilege will suffice."

The doctrine of the case of *Domenech, supra,* which is the same of the case of *McCulloch, supra,* approved in innumerable subsequent cases by the Federal Supreme Court, is in force and has not been changed. What has been clarified and limited is the concept of instrumentality or agency of the Federal Government to which such doctrine should be applied, and the application which has been made of same to the salaries of officials and employees since the case of *The Collector* v. *Day,* 11 Wall. 113 (1870), was decided, has been discarded. In that case it was held that a Federal income tax imposed on the salary of a state judge was void, thereby initiating what we might call a doctrine of reciprocal immunity between the Federal Government and that of the states as regards the unlimited imposition of taxes which could hinder, under certain circumstances, the work

496

of the said governments and impose undue burdens on the same. In *N. Y. ex rel. Rogers* v. *Graves*, 299 U. S. 401, that rule was applied to annul an income tax of the State of New York imposed upon the attorney of the Panama Railroad Company because this company was an agency of the Federal Government, and in *Brush* v. *Commissioner*, 300 U. S. 352, applying in reverse the doctrine of reciprocity, it was held that the federal tax could not be applied to the salary of an engineer of the water system of the City of New York. In one form or another the doctrine has been applied in other cases, but even from its pronouncement in *The Collector* v. *Day*, *supra*, it was the object of a strong disagreement from Mr. Justice Bradley, who stated that the same was "founded on a fallacy, and that it will lead to mischievous consequences." Through the years other judges have expressed their disapproval of the doctrine[4] in language no less biting, among them being the already famous paraphrase to the dictum of Mr. Justice Marshall in *Mc Culloch* v. *Maryland*, *supra*, to the effect that "the power to tax involves the power to destroy," to which Mr. Justice Holmes in *Panhandle Oil Co.* v. *Knox*, 277 U. S. 218, commented that "the power to tax *is not* the power to destroy *while this court sits.*" (Italics ours.)

The first case in which the rule of reciprocal tax immunity was partially discarded with respect to salaries of officers or employees of the federal or state governments, or any of their agencies or instrumentalities, was that of *Helvering* v. *Gerhardt*, 304 U. S. 405 (1938). The case involved the application of the federal income tax to the salaries of certain employees of the New York Harbor Authority, an agency or instrumentality of the State of New York. After reviewing the earlier decisions, the Court, speaking through Mr. Justice Stone, stated that " . . . the state im-

---

[4] See the summary which Mr. Justice Frankfurter makes in his concurring opinion in *Graves* v. *N. Y. ex rel. O'Keefe*, *supra*.

munity from the national taxing power, when recognized in *Collecor* v. *Day, supra,* was narrowly limited to a state judicial officer engaged in the performance of a function which pertained to state governments at the time the Constitution was adopted, without which no state 'could long preserve its existence,' '' and refusing to extend the said limitation, declared the tax imposed valid.

In a concurring opinion in said case Mr. Justice Black stated that the Court should "review and reexamine the rule based upon *Collector* v. *Day*", and that "That course would logically require the entire subject of intergovernmental tax immunity to be reviewed in the light of the effect of the Sixteenth Amendment authorizing Congress to levy a tax on income from 'whatever source derived.' ''

The review requested by Mr. Justice Black was not long in coming, for two years later, in the case of *Graves* v. *N. Y. ex rel O'Keefe,* 306 U. S. 466, the Supreme Court expressly reversed *The Collector* v. *Day, supra,* and *N. Y. ex rel. Rogers* v. *Graves,* 299 U. S. 401, on the point that the salaries of the employees and officers of the national or state governments, or of their agencies or instrumentalities, enjoy immunity from the imposition of an income tax. Once again, through Mr. Justice Stone, the Court made the following statements at pages 480 and 481:

"The present tax is a non-discriminatory tax on income applied to salaries at a specified rate. It is not in form or substance a tax upon the Home Owners' Loan Corporation or its property or income, nor is it paid by the corporation or the government from their funds. It is measured by income which becomes the property of the taxpayer when received as compensation for his services; and the tax laid upon the privilege of receiving it is paid from his private funds and not from the funds of the government, either directly or indirectly. The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source, is no longer tenable, *New York ex rel. Cohn* v. *Graves,* 300 U.S. 308, 313, 314; *Hale* v. *State Board,* 302 U.S. 95, 108; *Helvering* v. *Gerhardt, supra;* cf. *Metcalf & Eddy* v. *Mitchell,* 269 U.S. 514; *Fox Film Corp.* v. *Doyal,*

286 U.S. 123; *James* v. *Dravo Contracting Co., supra,* 149; *Helvering* v. *Mountain Producers Corp.,* 303 U.S. 376, and the only possible basis for implying a constitutional immunity from state income tax of the salary of an employee of the national government or of a governmental agency is that the economic burden of the tax is in some way passed on so as to impose a burden on the national government tantamount to an interference by one government with the other in the performance of its functions."

And later on, the Court said at page 486:

"Assuming, as we do, that the Home Owners' Loan Corporation is clothed with the same immunity from a state taxation as the government itself, we cannot say that the present tax on the income of its employees lays any unconstitutional burden upont it. All the reasons for refusing to imply a constitutional prohibition of federal income taxation of salaries of state employees, stated at length in the Gerhard Case, are of equal force when immunity is claimed from state income tax on salaries paid by the national government or its agencies. In this respect we perceive no basis for a difference in result whether the taxed income be salary or some other form of compensation, or whether the taxpayer be an employee or an officer of either a state or the national government, or of its instrumentalities. In no case is there basis for the assumption that any such tangible or certain economic burden is imposed on the government concerned as would justify a court's declaring that the taxpayer is clothed with the implied constitutional tax immunity of the government by which he is employed."

A logical consequence of the new doctrine established in the case of *Graves* v. *N. Y. ex rel. O'Keefe, supra,* was the subsequent reversal in *Alabama* v. *King & Boozer,* 314 U. S. 1 (1941), of the cases of *Panhandle Oil Co.* v. *Knox,* 277 U. S. 218, and *Graves* v. *Texas Company,* 298 U. S. 393, it being there held that there is no tax immunity with respect to a sales tax imposed by a state on the purchase of building materials by one person who had a cost-plus-a-fixed-fee contract with the Federal Government to build an army camp. See also *Curry* v. *United States,* 314 U. S. 14. Nevertheless, in *Fed. Land Bank* v. *Bismarck Co.,* 314 U. S. 95, it was held that the amount of a state sales tax on certain

building materials could not· be collected from a federal bank because Congress could exempt such institutions from state taxes. The same rule therefore that was invoked in *Domenech* v. *National City Bank, supra,* was applied. Other applications and limitations as to the scope of the rule established in *Graves* v. *N. Y. ex rel. O'Keefe, supra,* may be seen in *Penn Dairies* v. *Milk Control Comm'n.,* 318 U. S. 261 (1943), and *Mayo et al.* v. *United States,* 319 U. S. 441, decided on June 1, 1943.

We find, therefore, that the field has been properly marked off. The State, as well as the territory or insular possession, is without power to impose a tax on an agency or instrumentality of the Federal Government. Nevertheless, the salaries of federal employees or of those who work in a Federal agency or instrumentality are not exempt from taxation under an income tax law.

Petitioner argues, nevertheless, that the doctrine of the case of *Graves* v. *N. Y. ex rel. O'Keefe, supra,* is only applicable to the states in their intergovernmental relations with the Federal Government, but not to Puerto Rico, to which Congress has not granted the power to impose such a tax. The case of *Domenech* v. *National City Bank, supra,* on which he relies is not authority, after the decision in the *Graves* case, *supra,* for a different rule, especially after the approval of the Public Salary Tax Act, §4 of which we have copied above. The contention of the petitioner is that said Section did not grant Puerto Rico the power to impose taxes on the salaries of federal employees because of the limitation it contains that the same was granted only to "any duly constituted taxing authority *having jurisdiction to tax such compensation,*" (italics ours) that is to say, that the statute conferred no jurisdiction to impose the tax if the jurisdiction did not previously exist.

In the first place, let us say that if petitioner's reasoning is intended to have the scope of a contention that our

Legislature is not a duly constituted taxing authority, it cannot and must not prevail. To hold that Puerto Rico is not "a duly constituted taxing authority" after having been governed for twenty-six years by the Organic Act approved in 1917, is to ignore, not only the scope which the decisions of our highest national Tribunal have recognized in the form of government established in Puerto Rico by Congress by virtue of the said constitutional Act as having, but also to make light of the express provisions thereof. The case of *Domenech* v. *Havemeyer*, 49 F. (2d) 849 (1931), acknowledged the authority of our Legislature to approve an income tax law, even before the amendment to §3 of our Organic Act in 1927 in which power was expressly granted to impose such taxes when the Circuit Court of Appeals stated as follows:

"It is true that that Legislature [of Puerto Rico] has no powers except those granted expressly, or by necessary implication, by Congress. *Benedicto, Treasurer* v. *Porto Rican Am. Tobacco Co.,* (C.C.A.) 256 F. 422, 425.

"But by Section 37 of the Organic Act of March 2, 1917 (39 Stat. 964 [48 U.S.C.A. §§774, 821]) the Porto Rican Legislature was given general legislative powers, and by section 3 (39 Stat. 953 [48 U.S.C.A. §741]) was granted power to levy 'taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions.'

"The Sixteenth Amendment had then been adopted; there is much weight to the contention that 'internal revenue', as used in this act, covered income taxes, without apportionment, in Puerto Rico, as it then did in the United States. (Citing cases.)"

And further on, upon commenting on the power granted the Legislature of Puerto Rico to "amend, alter, modify, or repeal" the federal income tax act, it held that "Obviously there is very little difference between power (above mentioned) and the power to enact a like law *de novo*." "That Congress intended the Legislature of Puerto Rico to have power to enact income tax laws is expressly shown by the

Act of March 4, 1927 (44 Stat. 1418). This may fairly be construed as intended to make absolutely clear what had been implied before." Even the Supreme Court of the United States upon deciding subsequently the case of *Domenech* v. *National City Bank, supra,* made the following reference in a notation on page 206: "For a discussion of the implied authority of the Island to impose an income tax prior to the passage of the Act of March 4, 1927, see *Domenech* v. *Havemeyer,* 49 F. (2d) 849, 850," part of which we have just cited.

Less explicit than the authority granted to the Legislature of Puerto Rico in relation to the power to impose taxes in accordance with §3 of the Organic Act is that contained in §55 of the Organic Act of Hawaii (48 U.S.C.A., §562) which says: "The legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." Upon deciding a similar case, *Yerian* v. *Territory of Hawaii,* 130 F. (2d) 786 (1942), the Circuit Court for the Ninth Circuit, under the authority of the case of *Graves* v. *O'Keefe, supra,* held valid a tax imposed by the Territory upon an employee of the Home Owners' Loan Corporation, an instrumentality of the United States. The contention of the appellant was the same here made by petitioner, that is to say, that Congress had not granted the territorial Legislature power to impose such a tax. After citing §55 of the Organic Act, *supra,* and referring to the rule that neither the States, nor the Territories and possessions, can impose taxes on an instrumentality of the United States, citing among others, the case of *Domenech* v. *National City Bank, supra,* the Court stated as follows at page 789:

"In the case at bar, however, we are not concerned with a tax upon instrumentalities of the United States. The Welfare Act imposes no such tax. It does impose a tax upon compensation of employees of instrumentalities of the United States. We are con-

cerned with that tax only in so far as it applies to compensation of employees of the Home Owners' Loan Corporation. Congress has not exempted such compensation from taxation. *Graves* v. *People of New York ex rel. O'Keefe*, 306 U.S. 466, 59 S. Ct. 595, 83 L. ed. 927, 120 A.L.R. 1466. Therefore such compensation could be taxed, even if Congress had not given its consent to such taxation. *Graves* v. *People of New York ex rel. O'Keefe*, *supra*. See, also, *State Tax Commission* v. *Van Cott*, 306 U.S. 511, 59 S. Ct. 605, 83 L. ed. 950. Actually, however, Congress gave such consent by Sec. 4 of the Public Salary Tax Act of 1939, 5 U.S.C.A. Sec. 84 *a*, which provides: (Quoting)

"The tax here involved was upon compensation received by appellant after December 31, 1938, for personal service as an employee of an instrumentality of the United States. It was imposed by a duly constituted authority (the Territorial Legislature) having jurisdiction to tax such compensation and does not discriminate against appellant because of the source of such compensation. We conclude that the tax was consented to by Congress."

If all that has been said above were not enough to sustain the authority of our Legislature, we cannot nor should we forget, when questions are raised which tend to impair the powers granted, and even those impliedly inherent in the structure of the government we enjoy, the express holding of the Supreme Court of the United States in the case of *Puerto Rico* v. *Shell Co.*, 302 U. S. 253 (1937) to the effect that: "The aim of the Foraker Act and the Organic Act (of 1917) *was to give Puerto Rico full power of local self-determination, with an autonomy similar to that of the states and incorporated territories.* (Citing cases.) *The effect was to confer upon the territory many of the attributes of quasi-sovereignty possessed by the states*—as, for example, immunity from suit without their consent. (Citing cases.) *By those acts, the typical American governmental structure, consisting of the three independent departments—legislative, executive and judicial—was erected. 'A body politic'*—a commonwealth—*was created.* 31 Stat. 79, §7, c. 191. *The power of taxation*, the power to enact and enforce laws, and other characteristically governmental powers were vested.

And so far as local matters are concerned, as we have already shown in respect of the continental territories, *legislative powers were conferred nearly, if not quite, as extensive as those exercised by the state legislatures.*" (Italics ours.)

See also, *West India Oil Co.* v. *Domenech,* 311 U. S. 20.

Now then, if the reasoning of the petitioner is limited only to the contention that, even admitting the existence of a duly constituted taxing authority in Puerto Rico, this authority had no jurisdiction before the approval of the Public Salary Tax Act, and that, therefore, it now lacks such jurisdiction, we cannot agree either. The argument of petitioner apparently is to the effect that when Congress in the year 1927 granted power to Puerto Rico to impose income taxes, it did so when the decisions then held that such taxes could not be imposed on the salaries of federal officers and that, therefore, when Congress approved the Public Salary Tax Act in 1939, the Legislature of Puerto Rico had no jurisdiction to impose upon them such a tax.

As we have seen, in the case of *Domenech* v. *National City Bank, supra,* the Federal Supreme Court acknowledged the implied authority of Puerto Rico to impose income taxes even before the year 1927 when such power was expressly granted, and upon such grant jurisdiction was conferred to impose all kinds of income taxes which could have been constitutionally imposed originally. The fact that the Supreme Court first held that such tax could not be imposed on the salaries of federal officers and later held the contrary, does not imply that the authority and jurisdiction granted have changed. The statute is the same. Only its interpretation has varied in the course of the years. The restriction imposed by the Supreme Court was abolished by the Supreme Court itself. The result is that the jurisdiction of the legislative authority of Puerto Rico always existed.

504

Certainly this Supreme Court will not be the one who, by restricted and unwarranted interpretations, tends to impair and limit the powers granted to our Legislature so long as in the exercise thereof it keeps within the limitations fixed by our Organic Act. We hold that the Legislature of Puerto Rico is a duly constituted taxing authority which had and has jurisdiction to impose taxes within the limits of the Public Salary Tax Act, *supra*, and that the salaries of the federal, employees in Puerto Rico are subject to the payment of the Victory Tax, if, as we are going to consider and decide, the said tax is not discriminatory, the second question presented in this case.

 Petitioner contends that the Victory Tax is void because the act discriminates against the persons who derive their income from salary or wages, in favor of persons who derive their income from purchase and sale contracts, such as stock brokers, real estate speculators and other similar ones, and that the exemption or classification contained in §1 of the Act, *supra*, note 2, is so ample that it includes the income of all the merchants, farmers, middlemen, wholesale and retail merchants. He argues, finally, that the classes benefited by the exemption are so varied that the reasonable basis of the classification cannot be determined.

The exaggerated argument of petitioner is based on the fact that he does not take into consideration in any manner the limiting phrase of the exemption contained in the statute, that is to say, all income "obtained from transactions in connection with contracts of purchase and sale in which those who receive it *may have acted as contracting parties*" (italics ours) shall be exempt. The limitation is specific and it cannot be held, as petitioner contends, that the legislative intention was to exempt from payment of the tax all those who simply act as middlemen or in any other manner, ex-

cept as contracting parties and receive a commission as compensation for their services.

The only question for decision is whether the exemption or classification mentioned violates §2, paragraph 1, of the Organic Act which provides that "No law shall be enacted in Puerto Rico which shall deprive any person of . . . property without due process of law, or deny to any person therein the equal protection of the laws."

This clause contains practically the same phraseology of the Fourteenth Amendment of the Constitution of the United States, and interpreting it in relation with the same question we are now discussing, the Circuit Court of Appeals for the First Circuit, sitting in Boston, in the case of *San Juan Trading Co.* v. *Sancho, Treasurer*, 114 F. (2d) 969, 971, said that: "This clause, like the XIV Amendment to the Constitution of the United States, in no way limits the power of the Legislature of Puerto Rico to classify the objects of legislation or the persons affected by it so as to subject different classes to different rates of taxation. (Citing cases.) However, such classification must be reasonably related to the object of the legislation and must be based upon some distinction which can rationally and fairly be made the reason for different taxation."

This doctrine has been applied by this court in various cases, *People* v. *Avilés*, 54 P.R.R. 257; *M. J. & S. Cabrera, Sucrs.* v. *Sancho-Bonet, Treasurer*, 58 P.R.R. 535; *Ballester* v. *Court of Tax Appeals*, 61 P.R.R. 460. Similar to other rules of constitutional interpretation, this has been one of the most debated in its extent and application by the Federal Supreme Court since its pronouncement, in definite form, and also through Mr. Justice Bradley, in the case of *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U. S. 232 (1890). As John B. Sholley points out in his doctor's thesis "Equal Protection in Tax Legislation," 24 Virginia Law Review, 229 and 388 (1938), published also in 1 Selected Essays on

Constitutional Law, Book 5, Taxation, 39–91 (1938), this opinion was the starting point in the development of the clause on equal protection as a limitation of the power of taxation of the states and even though he admits that what Mr. Justice Bradley said was a *dictum*—since the tax involved in said case was upheld—he affirms that the Supreme Court has never departed from the position therein stated and that "in almost the same degree as Chief Justice Marshall's more famous opinions, it has been regarded as the authoritative interpretation of the Constitution on the matter covered." Although it will make this opinion a little longer than is necessary, it seems to us proper to cite here the words of Mr. Justice Bradley. They are as follows:

". . . The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State Legislature, or the people of the State in framing their Constitution. But clear and hostile discrimination against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying that the Fourteenth Amendment was not intended to compel the States to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications

deemed material; but it would render nugatory those discriminations which the best interests of society require, which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice, and which every State, in one form or another, deems it expedient to adopt.''

Of course, the legislative power to make classifications or grant exemptions in taxation matters is not absolute, but, as long as they are not arbitrary or affect in a discriminatory manner the taxpayers included in the classification or exemption, the legislative action should be upheld. In any event it is up to the one who attacks the validity of the law to show that ''it is without any reasonable basis, and therefore is purely arbitrary,'' since ''when the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.'' *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61 (1910).

The purpose of classification in tax laws is to establish a system in accordance with the local conditions and needs, by virtue of which the tax burden may be equitably distributed and, to achieve this, it is obvious that the legislative branch of the government must be granted the most ample freedom of action. *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322. ''Since the members of a legislature necessarily enjoy a familiarity with local conditions . . ., the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.'' *Madden* v. *Kentucky*, 309 U. S. 83, 88 (1939). In this case the validity of a statute which imposed a tax of fifty cents on each one hundred dollars which were deposited in banks outside the State and one of only ten cents on the deposits in local banks, was upheld.

It was by virtue of the decision in the case of *Madden*, *supra*, that the Federal Supreme Court overruled its deci-

sion in *Colgate* v. *Harvey,* 296 U. S. 404 (1935), in which there had been invalidated an exemption granted by law to "interest received on account of money loaned within the state at a rate of interest not exceeding 5 per cent per annum." The dissenting opinion of Mr. Justice Stone, with which Justice Brandeis and Cardozo concurred, contains one of the most able and profound discussions on the matter. Since today, as a result of the *Madden* case, *supra,* the opinion of Mr. Justice Stone prevails, we quote from it the following paragraphs:

"The equal protection clause does not forbid inequalities in state taxation. A state may select the objects . . . and selection, which is but the converse of exemption, involves the imposition of a tax burden on some which is not placed on others. As this Court has repeatedly held, *inequalities resulting from the singling out of one particular class for taxation or exemption, regardless of the reason for the choice, or even if there is no discernible reason, are not to be pronounced invalid where there is no clear indication that the purpose or effect is a hostile or oppressive discrimination against particular persons or classes.*" (Observe how the words of the majority in the *Madden* case, above, are finally taken textually from the dissenting opinion of Stone in the *Colgate* case, *supra.*)

"The end sought by the classification is of significance in passing upon the constitutionality of the tax only in so far as it serves to show that the discrimination is not invidious. *If it appears or may fairly be assumed that it is for the purpose of promoting a permissible public aim, it cannot be condemned because one class must pay a tax which another does not.*

"In drawing the line between the taxed and the untaxed the equal protection clause does not command the impossible or the impractical. Unless the line which the state draws is so wide of the mark as palpably to have no reasonable relation to the legitimate end, it is not for the judicial power to reject it and say that another must be substituted."

The same rule governing state legislatures is applicable to the Legislature of Puerto Rico, thus only in extreme cases and when a clearly unreasonable and arbitrary classification is made—as in the case of the square or round matches—

the courts may and should invalidate it. *San Juan Trading* v. *Sancho, supra,* and even in this case, of the three judges who took part, there was one who concurred in part and another who dissented. The reason is that there does not exist, nor can exist, a fixed rule as to what constitutes reasonableness in the classifications for taxation purposes. "In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things," *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (1898), and "the courts invariably, if they sense any possibility of so doing, sustain the legislative action . . . They recognize that taxation presents a practical problem; that exact equality is utterly impossible, and that the legislative discretion should be sustained if it can be." *State* v. *Welsh,* 251 N. W. 189, 213.

In the manner in which §1 of the Act, *supra,* is worded, if the purchase and sale contracts had not been exempted from its terms, there is no doubt that, generally, the tax could be considered, in that aspect, as one on sales. However, the Legislature considered it desirable to exempt this class of income. Did it have any justifiable political public or economic reason for so doing? The reason might have been, without our deciding whether it is good or bad, since that is not a function of the courts, the legislative action in abolishing the 2 per cent tax on sales which had existed since the year 1927. For reasons which it is not the duty of this court to decide whether they were or not justified within a policy of sound public finance, the Legislature considered it desirable to eliminate the said tax and it did so by Act No. 29, approved April 12, 1941.

Upon approving the Victory Tax Act in 1942, the Legislature, in harmony with its previous act in abolishing the 2 per cent sales tax, exempted from the payment of the 5 per cent provided by law, the income received by virtue of purchase and said contracts with the limitation pointed out.

Could it be considered that this exemption or classification is unreasonable or arbitrary? We think not. Having exempted sales from the payment of a 2 per cent tax, it would not seem logical to impose on them a little later a 5 per cent tax on the gross income received by virtue of purchase and sale contracts, which in fact would include all the income from the sales effected in the Island.

We do not find in this exemption any discrimination against petitioner. The income which petitoner might obtain by virtue of any purchase and sale contract in which he intervenes, is exempt from the Victory Tax, just the same as that of a merchant or farmer.

Even though, the apparent purpose of the law as suggested by the representative of the Attorney General during the course of the hearing, that is, that it is a measure tending to avoid inflation during the present emergency, may or may not be supported from the economists' point of view, we are not warranted in rejecting it nor bound to give an opinion on the same. Economists and lawyers do not seem to have the same point of view in the interpretation of tax laws. As T. R. Powell has said in his essay "New Light on Gross Receipts Taxes" in 53 Harvard Law Review 909, 924 (1940) "The legal universe of discourse and the economic universe of discourse are not always the same." Thus the acknowledged authority in income tax matters, Randolph Paul, in his recent lecture on *Federal Taxation in Total War*, published in 28 Cornell Law Quarterly 141 (January 1943), referring to sales tax as a means to avoid inflation, said:

"The sales tax is too crude an instrument to do an effective job in controlling inflation. It is not sensitive to differences in spending capacity. Every person pays the same tax rate whether he contributes one dollar or a million dollars to the stream of inflationary spending power. Thus, the tax fails to discriminate between persons who can reduce their purchases substantially and persons who cannot do so. In consequence, it is impossible to impose a sales tax at sufficiently high rates to curtail the consumption of persons

whose living standards are liberal, without at the same time levying an intolerable burden on tens of millions of our citizens. If it is imposed at low rates, the sales tax will exercise little or no restraining influence on the persons who are in the best position to reduce their standards of living."

We neither accept nor reject the points of view of Paul on the economic ability of the sales tax to avoid inflation. It is an opinion which the Legislature might have considered reasonable. That it had in mind and took into consideration the economic conditions of the Island when such emergency measure was approved and that such conditions could change even during the limited term it was in force, is shown by §6 of the Act, which provides as follows:

"When the index of retail prices of the staple foods of Puerto Rico, as enumerated hereinafter, reaches the level of the months of June, 1941, the exemption established for The Victory Tax levied in this Act shall be twelve dollars and four cents (12.04) for each week and one dollar and seventy-two cents ($1.72) for each day, when it is proper to compute by days, according to Section 5. The index shall be computed by the Office of Statistics of the Governor of Puerto Rico on the basis of the prices reported by the Department of Agriculture and Commerce. The system of weighed relatives shall be used. The weighing shall be made on the basis of the consumption of these products by the laboring classes of Puerto Rico, as determined through the study of receipts and expenditures of the workmen of the Insular Department of Labor in cooperation with the Work Projects Administration (WPA). There shall be included for the computation of the index the following products: rice, beans, cornmeal, lard, ham, salt pork, codfish, onions, potatoes, plantains, yautías, sweet potatoes, milk, coffee, and sugar. The Governor of Puerto Rico shall promulgate, through proclamation, the date on which the prices of these products fall to the level of June 1941."

If we add to the above stated consideration the fact that, as stated by Paul, supra, a sales tax would have no effective result in controlling inflation, we would have to agree that the Legislature could believe that the elimination of said tax would tend to avoid it, and this being so, we should apply

the rule stated by Mr. Justice Stone, cited before that ''If it appears or may fairly be assumed that (the classification) is for the purpose of promoting a permissible public aim, it cannot be condemned because one class must pay a tax which another does not.'' Even more, in the year 1941, the Congress of the United States approved Supplement ''T'' to the Internal Revenue Code, by virtue of which a tax on gross income was established, at the taxpayer's option, on persons whose gross income was $3,000 or less, consisting entirely of one or more of the following: ''salaries, wages, compensation for personal services, dividends, interest, or annuities.'' 26 U.S.C.A. §400. It should be noted than even though this tax is optional on the part of the taxpayer, only those receiving $3,000 or less can avail themselves of it, and, furthermore, that their income be received exclusively from the sources stated in the classification which we have copied, which, by the way, are quite similar to those of our Act.

The representative of petitioner himself admitted at the hearing that if the Legislature, when making the exemption, had specified determined purchase and sale transactions, the Act would be valid. In fact, this was what the Legislature did because it limited them to those in which the income was received by the person acting as contractor, an exemption which covers, as we have said before, those purchase and sale transactions in which the petitioner has acted as such and received income.

Even though the income tax is not considered legally or economically as a tax on the source, *Graves* v. *N. Y. ex rel. O'Keefe, supra; Ballester* v. *Court of Tax Appeals, supra,* we are of the opinion that the classification made on the basis of the gross income does not violate *per se* the clause on equal protection. Petitioner argues, however, that he has not found any case in which a classification has been made on the basis of ''kind of income, irrespective of who receives

it," and that therefore, the classification is inherently unreasonable. He is wrong, in our opinion, under the precedents. Let us examine some.

In *Marshal* v. *South Carolina Tax Commission*, 178 S. C. 57, 182 S. E. 96, cert. den. 296 U. S. 585, 56 S. Ct. 96, 80 L. ed. 413, it was decided that a statute which imposes a tax at the rate of five per cent on the interest on dividends received by a person in excess of one hundred dollars is not unconstitutional on the basis that it establishes an arbitrary discrimination against the persons whose incomes are derived from interests and dividends and in favor of persons whose incomes are derived from other sources. In *In re Opinion of the Justices*, 270 Mass. 593, 170 N. E. 800, it was decided hat classifying incomes on the basis of the source from which they are derived, establishing a distinction between "net business income" and "net income from intangibles" is a valid classification. In *McCutchen* v. *Oklahoma Tax Commission*,_____Okla._____, 132 P. (2d) 337, it was held that the income tax of Oklahoma which grants complete personal exemption to those persons whose incomes are received entirely within the jurisdiction of Oklahoma, and only one partial personal exemption to those persons whose incomes are received, part within and part outside of Oklahoma, is not invalid on the basis that it denies the "equal protection of the laws" under the Fourteenth Amendment.

On June 8, 1943, the Circuit Court of Appeals of the United States for the First Circuit, upon confirming the judgment of this Supreme Court in the case of *Monllor & Boscio, Sucrs.* v. *Sancho, Treas.*, 61 P.R.R. 63, had an opportunity to reiterate the doctrine which we have been commenting. In referring to the classification established by our Act in the imposition in Puerto Rico of a tax on the fortified wines and another on the alcohol used for fortifying, when the imported wines had only to pay the first tax, the court stated as follows:

"The tax, however, is uniform in that it treats all wine producers who fortify wines in Puerto Rico in the same way *and the classification which it has adopted has a rational basis and is not unreasonable.* As was said in *Henneford* v. *Silas Mason,* 300 U.S. 577, 587:

" 'A state [territory] for many purposes, is to be reckoned as a self-contained unit, which may frame its own system of burdens and exemptions without heeding systems elsewhere.' "

The Victory Tax provided by the Act will cease to be imposed or collected six month after the war is finished between United States and Germany, Italy, and Japan. It is an emergency measure. It is argued, however, that there is nothing in the Act that indicates that the total amount of what is collected by virtue of that tax will go, in any manner, to contribute to the effort of winning the present war. The argument has no merits. Petitioner admitted in the hearing that he did not attack the tax because it was a special tax the amount of which will go to the general funds of the Treasury in violation of paragraph 23 of §2 of the Organic Act. This being the case, we have no doubt that the Legislature was justified in providing new sources of income for the general funds of the Government to avert in part the economic condition created in Puerto Rico by reason of the war emergency. The fact that there is a difference of opinion as to the appropriateness of the name or description given to an Act is immaterial. Let us follow the advice of Mr. Justice Holmes and "think things and not words." Frankfurter: Mr. Justice Holmes and the Supreme Court, 57. For the purposes of final victory in the present war we not only have to provide support to the war front, but at the same time we have to favor, attend to, and not abandon the domestic front.

We repeat that we are not expressing any opinion as to the wisdom, practicability or policy involved in the Act levying the tax. That is not our mission. *Ballester* v. *Court of Tax Appeals, supra,* p. 507. It is more difficult and subtle to decide, as Mr. Justice Frankfurter has said "not whether

legislation is wise, but whether legislators were reasonable in believing it to be wise." Id., p. 30. In this case we believe the Legislature did not violate the clause on equal protection when approving the so-called Victory Tax.

■ Petitioner finally holds that the Act is void because its title violates paragraph 8 of §34 of the Organic Act which provides:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The title of the statute attacked is as follows:

"To provide revenues for the People of Puerto Rico through the levying of a certain additional income tax, which shall be known as 'The Victory Tax'; to appropriate funds for the administration of this Act, and for other purposes."

We admit that this title is far from being a model of perfection, but we believe that in stating that the purpose of the Act is to impose "a certain additional income tax," the fact that it is not specified that it is imposed on certain gross incomes, or that it failed to express the exemptions contained in the Act, does not make it legally insufficient.

This court has decided, among others, in the case of *Vázquez* v. *Board of Trustees,* 59 P.R.R. 144, 148, that "As the act in controversy contains a single subject, its title is sufficient, and the same is not required to express all the details of the act nor to include an unnecessary index thereof."

The purpose of the constitutional principle contained in §34, *supra,* has been stated in *Posados* v. *Warner, B. & Co.,* 279 U. S. 340. And it is " . . . to prevent the inclusion of incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth and fraud in legislation," or as was said in *Louisiana* v. *Pilsbury,* 105 U. S. 278: " . . . to prevent the practice, common in all legislative bodies where no such provision exists, of embracing in

the same bill incongruous matters, having no relation to each other, or to the subject specified in the title, by which measures are often adopted without attracting attention, which, if noticed, would have been resisted and defeated. It thus serves to prevent surprise in legislation."

The Act in this case only deals with one matter: the imposition of a certain additional income tax, to which the name Victory Tax is given. There is nothing in it that is inconsistent with the specified subject. The fact that the title does not specify the kind of income on which the tax is levied does not invalidate the statute. The title would have been better and clearer if it had done so, but in the manner in which it is worded it clearly states that it is an additional income tax, and as it does not include in the text of the act any other kind of tax, as for example, property tax, licenses or excises, we are of the opinion that it is sufficient. See *Christopher* v. *James*, 12 S. E. (2d) 813 (1941). That the Act does not contain anything that explains or justifies the name given to it, both in the title and in §1, *supra*, is not sufficient ground for us to declare it void. In this respect we refer to what we have previously said in this opinion when deciding the second error.

Neither is it necessary that the title of a tax act express the exemptions which appear in the body of the same. *Hull* v. *Michigan State Apple Commission*, 296 N. W. 250; *State* v. *Erickson*, 244 Pac. 287.

Only in a clear and conclusive case would we be justified in annulling an act because of deficiencies in its title in violation of §34, *supra*. Cf. *Rodríguez* v. *District Court*, 60 P. R.R. 894. We do not believe this to be such a case.

The petition should be dismissed and the writ discharged.

Mr. Chief Justice Del Toro did not participate herein.

Mr. Justice Snyder, although not present when the opinion and judgment were filed, participated in the conferences at which the opinion was considered, and concurs therein.