DOMENECH, TREASURER OF PUERTO RICO, *v.* NATIONAL CITY BANK OF NEW YORK.

No. 386. Argued January 15, 16, 1935.—Decided February 4, 1935.

200

*Mr. William Cattron Rigby,* with whom *Mr. Benjamin J. Horton,* Attorney General of Puerto Rico, and *Mr. Nathan R. Margold* were on the brief, for petitioner.

*Mr. Earle T. Fiddler,* with whom *Mr. John A. Garver* was on the brief, for respondent.

By leave of Court, *Messrs. F. G. Awalt, George P. Barse,* and *John F. Anderson* filed a brief on behalf of the Comptroller of the Currency, as *amicus curiae.*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The respondent, a national banking association whose principal office and place of business is in New York, ap-

plied for and obtained authority to operate branches in Puerto Rico, pursuant to § 25 of the Federal Reserve Act as amended.[1] In 1932 the bank, as required by local law, filed with the petitioner a sworn statement of assets as a basis of assessment for taxation. By request, but under protest, it attached a memorandum stated to be for information only, in which was set forth the amount of its total assets, the sum of its capital, surplus, and undivided profits, the percentage the latter was of the former, and the value of the assets in Puerto Rico. The Treasurer considered the same percentage of the assets in Puerto Rico fairly represented the capital there employed. The amount thus ascertained was $2,439,200, which he divided into three items,—real property and buildings, $732,560; other personal property, $1,611,400; and tangible personal property, $95,240. Applying the statutory rate to $2,439,200, he fixed the tax at $62,122.98. Upon appeal the Board of Equalization sustained the Treasurer's action. The bank voluntarily paid $17,700.24, the amount attributable to real property and buildings, but paid under protest the balance of $44,422.74 demanded in respect of the personal property, and brought suit in the United States District Court for Puerto Rico to recover the amount. Judgment in favor of the Treasurer was reversed by the Circuit Court of Appeals. We granted a writ of certiorari,[2] because the case involves the application and scope of Acts of Congress and their effect upon the taxing power of insular possessions of the United States.[3]

---

[1] *Infra,* Note 7.

[2] 293 U. S. 549.

[3] See Rule 38, Par. 5 (b): "Where a circuit court of appeals . . . has decided an important question of federal law which has not been, but should be, settled by this court."

Respondent concedes the competence of the Island government to tax generally,[4] but asserts that R. S. 5219 as amended [5] prohibits a levy on the capital of a national bank. The further point is made that § 320 of the Political Code of Puerto Rico,[6] to which the petitioner refers

[4] The Organic Act for Puerto Rico (March 2, 1917, c. 145, § 3, 39 Stat. 951, 953, as amended by the Act of February 3, 1921, c. 34, § 2, 41 Stat. 1096) provides: " No export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; . . ." Express authority to levy income taxes was added by the amending Act of March 4, 1927, c. 503, § 1, 44 Stat. 1418, U. S. C. Tit. 48, § 741.

[5] R. S. 5219, as amended, U. S. C. Supp. Tit. 12, § 548, so far as material, is:

" The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

" 1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

.          .          .          .          .

"(c) In case of a tax on or according to or measured by the net income of an association, the taxing State may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations . . ."

.          .          .          .          .

" 3. Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed."

[6] " The assessment of every corporation, joint stock and limited liability company not incorporated in Porto Rico but engaged in the

as his authority, does not justify the imposition of the tax in question.   This the petitioner denies, and adds that the point was not presented below, and cannot, therefore, be mooted here.   In addition to contending that § 5219 never extended to Puerto Rico, he claims that in any event the section was rendered inoperative in the Island by § 25 of the Federal Reserve Act as amended.[7]

transaction of business therein, other than banks and banking institutions having a share capital, shall be made in the manner . . .   All the shares of stock in banks and banking institutions, whether of issue or not, existing by authority of the United States or of any State of the United States, or of Porto Rico, or otherwise, and located and doing business within Porto Rico, shall be assessed by the Treasurer of Porto Rico to the owners thereof in the municipal districts where such banks are located, and not elsewhere.   In the assessment of all Insular and municipal taxes that have been or may hereafter be, duly imposed by law in such municipality, whether such owners are residents of said municipality or not, all such shares shall be assessed at their fair market value on the fifteenth day of January, first deducting therefrom the proportionate part of the value of real estate belonging to the bank; and the persons or corporations who appear from the records of the bank to be owners of shares at the close of business on the day next preceding the fifteenth day of January of each year shall be taken and deemed to be the owners thereof for the purposes of this section.   Every such bank shall pay to the Treasurer of Porto Rico, at the time in each year when other taxes assessed in the municipality become due, the amount of the tax so assessed in such year upon the shares in such bank.   If such tax is not paid, the bank shall be liable for the same . . ."   (Compilation of Revised Statutes and Codes of Porto Rico of 1911, par. 2972, p. 559.)

[7]Act of December 23, 1913, c. 6, § 25, 38 Stat. 273, as amended by Acts of September 7, 1916, c. 461, 39 Stat. 752, and September 17, 1919, c. 60, § 3, 41 Stat. 286; U. S. C. Tit. 12, § 601.

"Any national banking association possessing a capital and surplus of $1,000,000 or more may file application with the Federal Reserve Board for permission to exercise, upon such conditions and under such regulations as may be prescribed by the said board, either or both of the following powers:

" First. To establish branches in foreign countries or dependencies or insular possessions of the United States . . ."

We find it unnecessary to determine whether the tax was authorized by § 320 of the Political Code, since we are of opinion that R. S. 5219 forbids its collection.

Taxation of a bank's branch is taxation of the bank itself.[8] The system of national banks was intended to be co-extensive with the territorial limits of the United States, and while the consent to taxation given by § 5219 refers in terms only to the states, it extends also to territorial governments and sets the limits of their exercise of the power.[9] The form of taxation here imposed is not permitted by the section.[10] The organization of a national bank in Puerto Rico is within the contemplation of the National Banking Act; but if there were doubt concerning the proposition, it finds support in legislation extending applicable laws of the United States to the Island.[11] Although the maintenance of branch banks is prohibited by the National Banking Act save under narrowly limited conditions,[12] their establishment in foreign countries, dependencies and insular possessions is authorized.[13] Puerto Rico, an island possession, like a territory, is an agency of the federal government, having no independent sovereignty comparable to that of a state in virtue of which taxes may be levied. Authority to tax must be derived

[8] *McCulloch* v. *Maryland,* 4 Wheat. 316, 317–318; 424–5.

[9] *Talbott* v. *Silver Bow County,* 139 U. S. 438, 443, 446, 448.

[10] *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664.

[11] Compare *Talbott* v. *Silver Bow County, supra.* 23 Ops. Atty. Gen. 169. And compare 36 Ops. Atty. Gen. 59. Section 9 of the Organic Act of March 2, 1917, c. 145, 39 Stat. 954, U. S. C. Tit. 48, § 734: " The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Porto Rico as in the United States, except the internal-revenue laws: . . ."

[12] R. S. 5155; Act of February 25, 1927, c. 191, 44 Stat. 1224, 1228; Act of June 16, 1933, c. 89, 48 Stat. 162, 189–190.

[13] *Supra,* Note 7.

from the United States. But like a state, though for a different reason, such an agency may not tax a federal instrumentality. A state, though a sovereign, is precluded from so doing because the Constitution requires that there be no interference by a state with the powers granted to the federal government.[14] A territory or a possession may not do so because the dependency may not tax its sovereign. True the Congress may consent to such taxation; but the grant to the Island of a general power to tax should not be construed as a consent. Nothing less than an act of Congress clearly and explicitly conferring the privilege will suffice. Not only do we find no such statutory consent but we are confronted by R. S. 5219, which *proprio vigore* extends to territories, and the Congressional declaration that it, like other statutes of the United States shall, if not locally inapplicable,[15] apply to Puerto Rico.

The petitioner insists that this section is locally inapplicable for two reasons. The first is that the section was intended to apply only to taxation by the state, territory, or governmental agency within whose borders the bank has its principal place of business. The argument is that Puerto Rico cannot avail itself of the consent to the taxing of respondent's shares, or the dividends thereon, since the shares have no situs except New York, which is, in contemplation of law, the association's home. The position is that the section must be available in its entirety or else wholly inapplicable. We think otherwise. If Puerto Rico can and does collect taxes of any of the types mentioned in R. S. 5219, the mere fact that the situation prevents resort to one of the other kinds thereby

[14] *McCulloch* v. *Maryland, supra; Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, 106.

[15] *Supra,* Note 11.

permitted does not make the statute a nullity in the Island. The record discloses that there has been assessed and collected a tax on the bank's local real estate, as permitted by paragraph 3 of R. S. 5219, and in addition an income tax upon the local income,[16] as permitted by paragraph 1 (c). These seem to afford appropriate and equitable methods of taxation in respect of the association's local branches and business.

Secondly, petitioner says § 25 of the Federal Reserve Act as amended,[17] exhibits an intention on the part of Congress that for purposes of taxation branches in dependencies or insular possessions shall be treated as if they were branches established in foreign countries. The argument is that as all are mentioned several times in the section as "foreign branches," and since confessedly the United States cannot limit or control the method or manner of taxation of foreign branches, the purpose was not to do so with respect to those in an insular possession.

We think the contention unsound. It does not follow from the lack of power of the United States in the one case that it did not intend to exercise its undoubted power in the other.

We are of opinion that § 5219 prohibits the imposition of the tax in question.[18]

The judgment is

*Affirmed.*

---

[16] The tax in question was collected under the Act of Puerto Rico, No. 74, Laws of Puerto Rico, 1925, pp. 400–550. For a discussion of the implied authority of the Island to impose an income tax prior to the passage of the Act of March 4, 1927 (*supra,* Note 4) see *Domenech* v. *Havemeyer,* 49 F. (2d) 849, 850.

[17] *Supra,* Note 7.

[18] Compare *National City Bank* v. *Domenech, Treasurer,* 47 Puerto Rico 29. *National City Bank* v. *Posados, Collector,* Supreme Court of the Philippine Islands, September 21, 1934.