## RIVERA v. BUSCAGLIA, Treasurer of Puerto Rico.

### No. 3981.

Circuit Court of Appeals, First Circuit.

Dec. 18, 1944.

Harry J. Williams and Killion, Connolly & Williams, all of Boston, Mass., for appellant.

I. Henry Kutz, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen. (Fowler V. Harper, Sol., Department of the Interior, of Washington, D. C., Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of the Interior, of Washington, D. C., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

462

MAGRUDER, Circuit Judge.

By Act No. 29, approved December 7, 1942, the Legislature of Puerto Rico enacted a so-called Victory Tax, imposing a tax of five per cent upon the gross income of every individual, in excess of a minimum amount. It is provided that the tax is to run from January 1, 1943, up until six months after the cessation of hostilities between the United States and the Axis Powers, and is to be in addition to the regular insular income tax. The main issue before us is the validity of the Victory Tax as applied to the salaries of federal employees resident in Puerto Rico, for the Act expressly covers "every kind of salaries paid in Puerto Rico by the Government of the United States of America".

Plaintiff, Emilio Rivera Ayala, is a resident of Puerto Rico, and for many years has been a postal employee at the United States post office in San Juan. On his own behalf and on behalf of all the persons employed in Puerto Rico by the federal government, plaintiff filed a complaint in the insular District Court at San Juan against the Treasurer of Puerto Rico, seeking a declaratory judgment that Act No. 29 is null and void on several grounds. The District Court sustained a demurrer to the complaint. After reviewing the case upon certiorari, the Supreme Court of Puerto Rico entered a judgment discharging the writ of certiorari and in effect declaring Act No. 29 valid as here applied. The pending appeal is from this judgment.

Whether the Legislature of Puerto Rico may tax the salaries of federal employees depends upon the construction of the Organic Act, for Congress of course may lawfully confer such power upon the insular Legislature, and the only question is whether it has done so. This is quite distinct from the question as to the extent of reciprocal immunities from taxation as between the federal government and the states of the Union, to be implied from the general scheme of the Constitution of the United States.

As originally enacted in 1917, the Organic Act contained no express reference to income taxes. 39 Stat. 951. § 37, 48 U.S.C.A. § 821, contained the general provision "That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, * * *." § 3 provided:

"That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; * * *."

In 1927 § 3 was amended by the insertion of the words "income taxes", so that thereafter § 3 sanctioned the imposition of "taxes and assessments on property, income taxes, internal revenue, and license fees", etc. 44 Stat. 1418, 48 U.S.C.A. § 741.

Though the power to impose income taxes is thus conferred in unqualified terms, appellant urges that Congress could not have intended in 1927, or in 1937 when this part of § 3 of the Organic Act was reenacted, 50 Stat. 843, 48 U.S.C.A. § 741, to authorize the Legislature of Puerto Rico to tax the salaries of federal employees; and therefore that an implied limitation should be read into the broad language of the grant. The argument is that, since at that time Collector v. Day, 1870, 11 Wall. 113, 20 L.Ed. 122, was accepted constitutional doctrine, founded, at least in part, upon the notion that a tax on income is legally and economically a tax on its source, it is not to be presumed that Congress intended to confer upon the Legislature of the territory a power to tax federal salaries which, as then supposed, could not constitutionally be taxed by the state Legislatures. It was not until 1939, in Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466, that Collector v. Day, supra, and New York ex rel. Rogers v. Graves, 1937, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306, were overruled so far as they recognized "an implied constitutional immunity from income taxation of the salaries of officers or employees of the national or a state government or their instrumentalities." Graves v. New York ex rel. O'Keefe, 306 U.S. at page 486, 59 S.Ct. at page 601, 83 L.Ed. 927, 120 A.L.R. 1466.

We are not impressed by the foregoing argument.

In Collector v. Day, supra, the court deemed it necessary to imply a constitutional immunity of federal salaries from state taxation, and vice versa, in order that the functioning of the federal and state

governments, in their respective spheres, "should be left free and unimpaired, should not be liable to be crippled, much less defeated by the taxing power of another government, which power acknowledges no limits but the will of the legislative body imposing the tax." 11 Wall. at pages 125–26, 20 L.Ed. 122. No such consideration is relevant as respects the territorial Legislature in its relation to the federal government. The Legislature of Puerto Rico, unlike the Legislatures of the states, is the creature of Congress; and in § 34 of the Organic Act Congress expressly reserves the power and authority to annul legislation enacted by the insular Legislature. 39 Stat. 961, 48 U.S.C.A. § 826. There could have been no apprehension that the functioning of the federal government would in any way be jeopardized by conferring authority on the Puerto Rican Legislature to lay taxes on income, including salaries of federal employees resident in Puerto Rico.

It may be conceded that the power of a dependency to tax its sovereign will not readily be implied, and that the grant by Congress to the Legislature of Puerto Rico of a general power to tax should not be construed as consent to the imposition of taxes on the United States itself or any of its agencies or instrumentalities. See Domenech v. National City Bank, 1935, 294 U.S. 199, 205, 55 S.Ct. 366, 79 L.Ed. 857. But it by no means follows from this that a further qualification should be read into the broad taxing authority conferred by the Organic Act, so as to exempt the salaries of federal employees from insular income taxes. After all, the ultimate responsibility for the government and welfare of the people of Puerto Rico rests with Congress. In the discharge of this responsibility, Congress has established the insular government. There is no a priori reason to suppose that Congress would not have wished federal employees in Puerto Rico, along with other residents, to bear their full share of the cost of maintaining the local government. Perhaps Congress did not advert specifically to the particular case of federal salaries when it amended the Organic Act in 1927 so as to confer upon the Legislature in general terms the power to impose income taxes. But more than this must be shown to justify qualifying the general language as suggested. See Trustees of Dartmouth College v. Woodward, 1819, 4 Wheat. 518, 644, 4 L.Ed. 629; Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 257, 58 S.Ct. 167, 82 L.Ed. 235. We find nothing in the general spirit and purposes of the Organic Act, and nothing in its legislative history and background, to give even the shakiest foundation for an inference that Congress, had it thought of the particular case in 1927, would have varied the comprehensive language of the Organic Act so as to exclude this special class of income from the taxing power of the territorial legislature.

Indeed, the indications seem to be the other way. The federal income tax law of October 3, 1913, passed shortly after the ratification of the Sixteenth Amendment, provided in § II M, 38 Stat. 180:

"That the provisions of this section shall extend to Porto Rico and the Philippine Islands: Provided, that the administration of the law and the collection of the taxes imposed in Porto Rico and the Philippine Islands shall be by the appropriate internal-revenue officers of those governments, and all revenues collected in Porto Rico and the Philippine Islands thereunder shall accrue intact to the general governments, thereof, respectively: * * *."

The Act did not exempt the salaries of federal employees. See § II B, 38 Stat. 168. So, at the outset, the salaries of federal employees in Puerto Rico, along with the incomes of other residents of the island, were taxed for the support of the insular government. Such continued to be the case under the corresponding provisions of the Revenue Act of 1916. See §§ 3 and 23, 39 Stat. 758, 776. The War Revenue Act of October 3, 1917, imposed certain additional income taxes to defray war expenses; but § 5 thereof, 40 Stat. 302, read as follows:

"That the provisions of this title shall not extend to Porto Rico or the Philippine Islands, and the Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively."

In this back-handed way, Congress seems to have authorized the Legislature of Puerto Rico to impose income taxes, even before the amendment of the Organic Act in 1927, for, as we said in Domenech v. Havemeyer, 1931, 1 Cir., 49 F.2d 849, 851: "Obviously there is very little difference between power to 'amend, alter, modify, or repeal' a federal law, and power to enact a like law de novo."

The Revenue Act of 1918 provided in § 261, 40 Stat. 1087, 1088:

"That in Porto Rico and the Philippine Islands the income tax shall be levied, assessed, collected, and paid in accordance with the provisions of the Revenue Act of 1916 as amended.

\* \* \* \* \* \* \*

"The Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively."

Shortly thereafter, on June 26, 1919, the Legislature of Puerto Rico, exercising the aforesaid power conferred by the War Revenue Act of 1917 and the Revenue Act of 1918, repealed the Federal Revenue Act of 1916 as applied to Puerto Rico and substituted in its place a new insular Income Tax Law. Act No. 80, Laws P.R.1919, p. 612, and § 77 at p. 670. This Act contained no specific exemption of federal salaries from the taxes imposed.[1]

The Revenue Act of 1921 provided, in § 261, 42 Stat. 271:

"That in Porto Rico and the Philippine Islands the income tax shall be levied, assessed, collected, and paid as provided by law prior to the passage of this Act.

"The Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively."

We have found no reference in the legislative history of this Act to the fact that in 1919 the Legislature of Puerto Rico had repealed the Revenue Act of 1916 as applied to Puerto Rico and had substituted therefor a new income tax law. But it is noted that § 261 of the 1921 Act struck out the specific reference to the Revenue Act of 1916 which was contained in the corresponding section of the 1918 Act above quoted, and substituted the more general statement that in Puerto Rico the income tax shall be levied, etc., "as provided by law prior to the passage of this Act", which

might mean, as provided by Act No. 80 passed by the Puerto Rican Legislature in 1919. § 261 of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 52 and § 261 of the 1926 Act, 26 U.S.C.A. Int.Rev. Acts, page 199 each contained the identical provision as to Puerto Rico found in § 261 of the 1921 Act. Then, as has previously been stated, Congress in 1927 amended § 3 of the Organic Act specifically to empower the Legislature to impose income taxes. After that the reference to Puerto Rico which had appeared in § 261 of the earlier Revenue Acts was dropped from the Revenue Act of 1928 and succeeding Acts.[2] Sections 251 and 252 of the Revenue Act of 1928, and the corresponding sections of the Acts of succeeding years, make clear that residents of Puerto Rico are not taxable under those Acts on income earned in Puerto Rico. 45 Stat. 850, 851, 47 Stat. 231, 232, 48 Stat. 738, 739, 49 Stat. 1718–1720, 52 Stat. 532, 533, 26 U.S.C.A. Int.Rev.Code, §§ 251, 252.

Summarizing, then: The early federal income tax laws applied to residents of Puerto Rico, including federal office holders there, but provided that such taxes should be collected by the proper officials of the insular government and applied "intact" to the support of that government. Gradually, in the manner above set forth, Congress left it to the Puerto Rican Legislature to enact income tax legislation applicable to the island, without in any manner indicating that it was thereby creating a privileged class—federal employees in Puerto Rico—exempt from the obligation they had previously borne to contribute with other residents of the island to the support of the local government whose benefits they enjoyed.

The immunity which plaintiff here asserts obviously cannot rest on any merit of his, or that of the special class he represents, nor is there any substantial basis for the theory that such immunity is so necessary for the protection of the federal government that Congress must have intended the unqualified language of the Organic

---

[1] We are not informed whether the salaries of federal employees were actually taxed under this Puerto Rican Act as interpreted and applied by the taxing authorities. By Act No. 31, passed in 1941, the insular Income Tax Act of 1924 was amended so as to provide specifically for taxing the salaries of officers and employees of the United States. Laws P.R.1941, p. 488.

[2] The current edition of the U.S.Code, 48 U.S.C.A. § 845, still carries the provision: "The Porto Rican Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico."

Act to be subject to an implied exception in favor of salaries of federal employees on the island.

■ If the matter were otherwise doubtful, the language of the Public Salary Tax Act of 1939, 53 Stat. 574, is broad enough to make clear the willingness of Congress that Puerto Rico should tax the salaries of federal employees there resident. Section 4 of that Act, 5 U.S.C.A. § 84a, provides:

"The United States hereby consents to the taxation of compensation, received after December 31, 1938, for personal service as an officer or employee of the United States, any Territory or possession or political subdivision thereof, the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, by any duly constituted taxing authority having jurisdiction to tax such compensation, if such taxation does not discriminate against such officer or employee because of the source of such compensation."

The Puerto Rican Legislature is certainly a "duly constituted taxing authority." The phrase "having jurisdiction to tax such compensation" means that the taxing body must have authority to impose income taxes and that the particular federal employee is within its taxing jurisdiction, as the committee report makes clear. See S.Rep. No. 112, 76 Cong., 1 Sess., p. 11. It was so held in Yerian v. Territory of Hawaii, 1942, 9 Cir., 130 F.2d 786, a case upholding an income tax imposed by the Legislature of Hawaii as applied to the salaries of federal employees.

■■ It is next contended that Act No. 29 contains a discriminatory feature which renders it invalid under the provision of section 2 of the Organic Act, 39 Stat. 951, 48 U.S.C.A. § 737, that "no law shall be enacted in Porto Rico which shall deprive any person of life, liberty, or · property without due process of law, or deny to any person therein the equal protection of the laws." The objection made is, that whereas the Act applies generally to individual gross incomes from whatever source derived, it contains an exemption of income "obtained from transactions in connection with contracts of purchase and sale in which those who receive it may have acted as contracting parties". While it has often enough been recognized that a statutory classification may be so invidious and lacking in rational basis as to offend the constitutional guaranties, the cases are few and far between in which a tax law has actually been invalidated on this ground. In the tax field, more than in any other, "legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Madden v. Kentucky, 1940, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 125 A.L.R. 1383. Since the tax now before us is a tax on gross income, its application to receipts from sales might have been regarded by the Legislature as having undesirable features of a sales tax. There are many conceivable grounds on which it might not have been unreasonable for the Legislature to make an exception of this distinctive category of income. The classification here was within the area of legislative discretion.

■ Finally, appellant asserts that the Act is invalid under section 34 of the Organic Act providing that no bill, except general appropriation bills, "shall be passed containing more than one subject, which shall be clearly expressed in its title." 39 Stat. 962, 48 U.S.C.A. § 832. This point we regard as wholly without merit, and it would be superfluous to add anything to what was said in the opinion below in disposing of it.

The judgment of the Supreme Court of Puerto Rico is affirmed with costs to the appellee.