**H. I. HETTINGER AND COMPANY,**
Plaintiff

v.

**THE MUNICIPALITY OF ST. THOMAS AND ST. JOHN,**
et al.,
**Defendants.**

**H. I. HETTINGER AND COMPANY,**
Plaintiff

v.

**THE MUNICIPALITY OF ST. CROIX, et al.,**
**Defendants**

Civil No. 226-1949

District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

July 11, 1950

*Same cases on appeal, see p. 509, this volume*

MOORE, *Judge*

The first of these two actions was brought in the Division of St. Thomas and St. John at Charlotte Amalie; the second in the Division of Saint Croix at Christiansted.

Upon joint motion of both parties, they were consolidated for the purpose of trial.

### STATEMENT OF FACTS

The plaintiff, H. I. Hettinger & Company, entered into a contract during the month of July, 1948, with the Federal Works Administrator of the United States for the performance within the limits of each of the two defendant municipalities of certain public works authorized by Public Law 510 of the 78th Congress, approved December 20, 1944 (ch. 615, 58 Stat. 827; 48 U.S.C. § 1409 et seq.). At the time of commencement of these actions, the plaintiff was, and still is, engaged in the performance of his said contractual obligations.

Under his said contract with the Federal Works Administrator the plaintiff will receive in each municipality certain payments from the United States, which will constitute gross receipts within the respective municipalities.

The pertinent parts of statutes involved are as follows:
EXCERPTS FROM THE ACT OF CONGRESS OF
JUNE 22, 1936, REFERRED TO AS THE OR-
GANIC ACT OF THE VIRGIN ISLANDS (Prec.
1 V.I.C.; 48 U.S.C. 1405 et seq.)

"Section 1405b. The inhabitants of the Municipality of St. Croix and of the Municipality of St. Thomas and St. John are hereby constituted into bodies politic and juridic, under the present name of each such Municipality and as such bodies they shall have perpetual succession and power (a) to adopt and use an official seal; . . .

\*　\*　\*

"Section 1405d. All local legislative powers in the Municipality of St. Croix, except as herein otherwise provided, shall be vested in a local legislative assembly, which shall be designated as the 'Municipal Council of St. Croix.'

"Section 1405e. All local legislative powers in the Municipality of St. Thomas and St. John, except as otherwise provided in this subchapter, shall be vested in a local legislative assembly which shall be designated the 'Municipal Council of St. Thomas and St. John.' . . .

\*　\*　\*

"Section 1406i. Taxes and assessments on property and incomes, internal-revenue taxes, license fees, and service fees may be imposed and collected, and royalties for franchises, privileges, and concessions granted may be collected for the purposes of the Government of the Virgin Islands as may be provided and defined by the municipal councils herein established: . . ."

EXCERPTS FROM THE TRADE TAX LAW OF 1947
OF ST. THOMAS

"Section 2. Beginning May 1, 1947, there shall be levied upon, collected from, and paid by persons, firms, partnerships, associations and corporations conducting trade or business in the Municipality of St. Thomas and St. John, a tax to be known as the Trade Tax and to be computed in proportion to the extent of the trade carried on or of the business done, as hereinafter defined.

"Section 3. (a) The extent of trade or business carried on by persons trading in articles, goods, merchandise, or commodities, excepting those especially taxed, shall be measured by the total

158

value of such items disposed of in the course of trade or business (which value is defined in Section 3(b) hereof), and the amount of the trade tax shall be a percentage of said value determined according to the following schedule . . .

"Section 4. All persons licensed to do business including those trading in articles, goods, merchandise or commodities shall pay a tax of ¾ of 1% on the gross receipts of such business.

\* \* \*

"Section 8. Every person, partnership, association or corporation taxed under Section 3 of Section 4 of this Law, including those trading in articles, goods, merchandise, or commodities, shall within fifteen (15) days after the end of each quarter, report to the Tax Assessor on forms to be provided for that purpose, the gross receipts during the preceding three months. Every person who violates or fails to observe the provisions of this section shall pay, in addition to the regular trade tax, a penalty of 1% thereon per month, or fraction thereof, that the filing herein required shall have been delinquent.

\* \* \*

"Section 10. If any person, firm, partnership, company, association, and corporation shall neglect or refuse to pay the trade tax within sixty days after the first day of June, the first day of September, the first day of December, and the first day of March, the Sheriff shall, upon written order of the Commissioner of Finance, proceed to collect the same by the attachment and sale of personal property of such debtor.

\* \* \*

"Section 21. This law shall not apply to agencies of the local or federal government, religious, charitable, benevolent, or educational organizations when not engaged in the conduct of business pursuits for profit."

EXCERPTS FROM THE 1947 INTERNAL REVENUE ACT OF THE MUNICIPALITY OF SAINT CROIX

"Section 2. The term 'selling price' as used in this Ordinance except where otherwise defined shall be construed to mean the invoice price at which such goods are sold by the local producer or the F.O.B. invoice price at which they are imported into the Municipality plus 25% of such invoice price.

\* \* \*

"Section 7. That there shall be collected and paid, once only, an internal revenue tax on each of the following articles which are sold, transferred, consumed, or introduced into the Municipality, as follows:

"[Subsections A to G inclusive, refer to tobacco, playing cards, firearms and ammunition, passenger tickets, alcoholic beverages, non-alcoholic beverages, and public performances.]

"H. Passenger-carrying automobiles, motor busses, motor trucks, motorcycles, motor scooters, marine engines, launches, and motorboats manufactured in or introduced into the Municipality after the date of approval of this Ordinance — a tax of 5% of the selling price.

"I. Pneumatic tires, inner tubes and solid tires — a tax of 5% of the selling price.

"J. On all other articles, goods, and commodities, including sugar but excluding other foodstuffs and charcoal — a tax of 2% of the F.O.B. invoice price.

\* \* \*

"Section 15. Any person selling, transferring, consuming, or introducing into the Municipality any article hereinabove subject to the payment of internal revenue tax on which such tax shall not have been paid within the required time . . . shall be punishable by a fine not exceeding $100 or by imprisonment for not more than 90 days, or both, and by confiscation of any dutiable merchandise on which the duty has not been paid.

\* \* \*

"Section 17. This Law shall not apply to agencies of the local or federal government, religious, charitable, benevolent, or educational organizations when not engaged in the conduct of business pursuits for profit."

It is the contention of the defendants that the plaintiff, insofar as the defendant Municipality of St. Thomas and St. John is concerned, is required to pay a tax of three-quarters (3/4) of one (1) per cent upon the amounts so received from the United States for work done within the Municipality of St. Thomas and St. John under and

160

pursuant to the provisions of the above ordinance of the Municipal Council of St. Thomas and St. John.

It is the contention of the defendants that plaintiff, insofar as the Municipality of St. Croix is concerned, is obligated to pay a tax of 5% on the selling price of motor vehicles, tires, inner tubes and solid tires introduced into that Municipality, and a tax of 2% of the F.O.B. invoice price of other articles, goods, and commodities which it may introduce into that Municipality under and pursuant to the provisions of the above Ordinance of the Municipal Council of St. Croix.

■-■ At the outset of this opinion it is well to clarify three fundamental points:

1. It is well settled that the Municipalities herein involved have no power, right or authority to levy a tax upon any agency or instrumentality of the United States government.

2. It is equally well settled that the firm of H. I. Hettinger and Company by reason of being engaged in the performance of its contract, is in no sense an agency or instrumentality of the United States Government.

3. Consequently, in considering whether or not this tax is applicable to the firm of H. I. Hettinger and Company, there is no question involved herein as to whether the tax is applicable to an agency or instrumentality of the United States Government.

The plaintiff contends that Congress did not intend to give, and did not give, to the respective Municipalities of the Virgin Islands in the Organic Act herein referred to, the power to tax private contractors in relation to money received or property imported or work done by them in the Virgin Islands under contract with the Federal Government for two reasons:

First: Plaintiff contends that prior to the passage of the Organic Act of the Virgin Islands (1936) the United

161

States Supreme Court decided in the case of Panhandle Oil Company v. Mississippi, 277 U.S. 218, 48 S. Ct. 451, 72 L. Ed. 857, that the state statute which imposed a tax upon gasoline sold by an oil company for use by the United States was not a valid tax. That in the case of Graves v. Texas, 298 U.S. 393, 56 S. Ct. 818, 80 L. Ed. 236, the Supreme Court invalidated a tax upon the storage and withdrawal from storage of gasoline to the extent that such gasoline was subsequently sold to the United States for use in its governmental functions.

From these and allied cases plaintiff contends that notwithstanding the fact that the Panhandle and Graves cases involved constitutional interpretation of the respective tax fields between the state and federal governments, they show that at the time of the passage of the Organic Act (1936) the states did not have the constitutional right to levy such a tax as the instant one of the Virgin Islands municipalities applicable to contractors doing work for the United States, and that Congress did not intend to give to the Virgin Islands taxing powers greater than those then possessed by the sovereign states. Plaintiff further contends that we cannot be guided by the decision of the United States Supreme Court in the case of Groner v. Standard Dredging Co., 224 U.S. 362, 32 S. Ct. 499, 56 L. Ed. 801, in which the court upheld the right of the territory of Puerto Rico to levy a property tax upon the property of a contractor located in San Juan harbor and being used in the performance of a contract between the owner of the property and the United States Government, because at the time of the passage of the Organic Act of the Virgin Islands a sovereign state of the Union could not have levied such a tax, and that in 1935, one year before the passage of the Organic Act of the Virgin Islands, the United States Supreme Court said in the territorial case of Domenech v. National City

Bank (1935), 294 U.S. 199, 204, 55 S. Ct. 366, 79 L. Ed. 857, 861:

"Puerto Rico, an island possession, like a territory, is an agency of the federal government, having no independent sovereignty comparable to that of a State in virtue of which taxes may be levied. Authority to tax must be derived from the United States. But like a state, though for a different reason, such an agency may not tax a federal instrumentality. A State, though a sovereign, is precluded from so doing because the Constitution requires that there be no interference by a State with the powers granted to the federal government. A territory or a possession may not tax its sovereign. True the Congress may consent to such taxation; but the grant to the Island of a general power to tax should not be construed as a consent. Nothing less than an act of Congress clearly and explicitly conferring the privilege will suffice."

Plaintiff therefore argues that Congress in granting the taxing power to the Virgin Islands in the Organic Act of 1936, used the language therein in the light of the then existing decisions of the Supreme Court in the Panhandle, Graves, and Domenech cases, and that the Supreme Court decision in the case of Alabama v. King and Boozer, 314 U.S. 1, 62, S. Ct. 43, 86 L. Ed. 3, was still five years in the distance. Consequently, Congress did not intend to give to the Virgin Islands the power to tax a private contractor doing work for the United States.

The Court is of the opinion, however, that such a contention is wholly unsound. The Domenech case makes it clear that the territory of Puerto Rico may not tax an agency or instrumentality of the Federal Government, while on the other hand, the Groner case makes it clear that a private contractor, such as the H. I. Hettinger Company (who may be doing work in the territory under contract of the Federal Government) is not such an agency or instrumentality of the Federal Government and that such a contractor may therefore be so taxed like all other private contractors by the territory to whom Congress has given the right to tax. There is no incon-

sistency in the territorial decisions in both the Domenech and the Groner cases; they both merely make clear the first two fundamental principles which we set forth at the beginning of this opinion.

The Panhandle and Graves cases dealt with the taxing powers of the sovereign states as limited by the constitutional grants to the Federal Government, while in the instant case there is no question of the constitutional right of the Federal Government to tax such contractors in its own field of taxation and it does so tax them in many ways despite the fact that it contracts with them to do work for the government and, consequently, there is no question of the right of the Federal Government to levy the tax in question in the Virgin Islands. There is only the statutory construction of whether Congress gave to its territory or agency a power which it unquestionably had: the right to tax all private contractors whether working on government contracts or not and in this connection it is well to note the court's words, supra, in the Domenech case in which the court said that "an island possession, like a territory, is an agency of the Federal Government." The Federal Government, therefore, gave to its agency certain taxing powers which it had and not such taxing powers as are reserved to the States which it did not have.

In the Groner case, the court held that, included in those powers to tax conferred by the government upon its possession or agency, was the power to tax private contractors doing work for the United States alike with private contractors doing work for others.

It must be borne in mind also that the Act for the territory of Puerto Rico was necessarily enacted before the court passed upon it in the Groner case. In fact it was enacted long before the one for the Virgin Islands; therefore, the United States Supreme Court in settling

this question for the island possession of Puerto Rico in the Groner case, ipso facto, settled this same question for the Islands possession of the Virgin Islands. Each stands in the same relation to the Federal Government, and each has been granted identical taxing powers in this respect.

Plaintiff contends secondly that such a tax, in practical operation, would be passed on to the Federal Government contrary to the intention of the Congress as all contractors would necessarily estimate the tax to be paid in the territory and add that amount to their bid. There is no merit in this argument as outlined in the decision of the Supreme Court in the Groner case giving to the territory of Puerto Rico the power to levy such a tax on property of a private contractor in Puerto Rico in connection with work done for the United States for which work the United States had contracted. Consequently, the Supreme Court has already had this argument before it in the Groner case and has held that this contention cannot prevail.

Plaintiff further contends that the respective municipalities intended to exempt private contractors doing work under contract with the Federal Government and bases its argument upon the fact that the law in each case is as follows:

"This law shall not apply to agencies of the local or federal government, religious, charitable, benevolent or educational organizations when not engaged in the conduct of business pursuits for profit."

Plaintiff contends that since the local legislatures did not have the power to tax agencies of the local or federal government, that the words must have been put there for some purpose, and the only purpose for which they could have been put there was that the legislature meant to exempt contractors doing business with the government.

Such an argument is not only fallacious, but it also overlooks the fact that the legislature merely expressed

165

its list of exemptions of those not covered, in order that all not so exempted would be included in the provisions of the Act. Plaintiff's argument also presupposes that the local legislatures were so uninformed that they did not know the difference between an agency of government and a private contractor, and that the legislators were naive enough to believe that a private contractor is an agency of the government "not engaged in the conduct of business pursuits for profit." The Court finds no merit whatever in this contention.

It is the opinion of this court that the case of Groner v. Standard Dredging Co., supra, is conclusive on the right of the respective territorial municipalities to levy the tax in question; that the plaintiff stands in the same position as any other private firm or corporation doing business in the Virgin Islands for profit; that the plaintiff is subject to the respective trade laws in the respective municipalities and that the plaintiff should be required to comply therewith.

Order may be drawn in conformity with the above opinion.