**MISSISSIPPI RIVER FUEL CORPORATION and Murphy Corporation, Appellants,**

v.

**Rufus W. FONTENOT, Collector of Revenue, State of Louisiana, Appellee.**

No. 15994.

United States Court of Appeals Fifth Circuit.

June 15, 1956.

Rehearing Denied July 16, 1956.

Clyde R. Brown, Monroe, La., Clarence L. Yancey, Shreveport, La., C. McVea Oliver, Monroe, La., for appellants.

John B. Smullin, Chief Counsel, Dept. of Revenue, Baton Rouge, La., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

In response to the state's demand for the severance tax [1] on oil and gas produced on Barksdale Field at Shreveport, Louisiana, the taxpayers paid under protest in compliance with the statute and brought this suit to recover the amount paid.

Based upon Article I, § 8, Clause 17 of the Federal Constitution, giving to the Congress the power to exercise exclusive jurisdiction over places purchased by the United States with the consent of a state legislature, for the erection of forts, magazines, dock yards, and other needful buildings, and on Act 12 of 1892 Legislature, which purports to give the federal government exclusive jurisdiction over land acquired by it within the state, plaintiff's claim was that the state has surrendered its jurisdiction over the area, in and from which the oil and gas were produced, to the federal government, and, therefore, its laws imposing severance taxes on oil and gas produced on property of the government could not extend to and operate in that area.

The defenses were: (1) that Barksdale Field was acquired by donation from the City of Shreveport, and was not, within the meaning of the invoked provision of the Federal Constitution, purchased by the consent of the legislature;

---

1. Laid and collected under Louisiana Revised Statutes of 1950, LSA, Title 47, Chapt. VI "Taxes on Natural Resources", Part 1, "General Severance Tax", Arts. 631–646 inclusive.

(2) that Act 12 of the Louisiana Legislature of 1892, relied on as giving legislative consent, is unconstitutional in that it is in violation of the article of the Louisiana Constitution, which provides that funds, credits, etc. cannot be loaned, and in violation of the article which provides that the power to tax corporations shall not be surrendered or suspended; (3) the tax is collectible in any event because, by paragraph (k), page 6, the lessees, upon consideration, contracted to pay the tax; and (4) the issue involved here was decided by the Louisiana Supreme Court against plaintiff in a suit[2] between the same parties, submitted on a stipulation of record in substance the same as that made here.

The district judge finding and concluding: (1) that the Louisiana severance tax is not a tax upon property but upon the privilege of severing natural resources from the soil, and in this case no part of the tax burden fell upon the federal government but was payable by the lessee who owned the working interest in the resource produced; (2) that the deeds by which the federal government acquired the title were donations and not sales, and the land did not fall within the purview of Art. I, § 8, Clause 17 of the Federal Constitution, and that exclusive territorial jurisdiction was not ceded by the State of Louisiana to the Federal Government; and (3) under paragraph (k) of the lease the lessees were obligated to pay the tax; rendered the judgment appealed from.

■ Appellants stating by way of preface: that they are not seeking to avoid the payment of the taxes because they are the lessees of the United States or because of any relationship, contractual or otherwise, with the Federal Government; and that they do not in any way question or seek to limit the scope of the principle[3] denying to persons dealing with the government immunity from state taxation; vigorously insist that the United States has exclusive jurisdiction over Barksdale Field and confidently invoke, as applicable here, the settled principle that a state may not exercise any legislative authority, including its taxing power in relation to property and activities of individuals and corporations within the territory where the United States has such jurisdiction.

Insisting that what and all that is presented here is a conflict in jurisdiction between the State of Louisiana on the one hand and the United States on the other over Barksdale Airforce Base, one of the largest military installations in the nation, appellants' argument proceeds thus:

"The primary question in these suits, therefore, is whether the United States is vested with exclusive jurisdiction over Barksdale Air Force Base, the area from which minerals are being produced, and the area on which gas is gathered. If such jurisdiction is vested in the United States, then the taxes claimed cannot be collected for it is axiomatic that the taxing power of a state is limited to persons within, and subject to, such state's jurisdiction. The principle is succinctly stated in 84 C.J.S., Taxation, § 11, p. 61:

" 'Since state laws do not operate beyond its jurisdictional limits, the

---

2. Murphy Corporation v. Fontenot, 225 La. 379, 73 So.2d 180.

3. "These decisions in a variety of applications enforce what we deem to be the controlling view—that immunity from non-discriminatory taxation sought by a private person for his property or gains because he is engaged in operations under a government contract or lease cannot be supported by merely theoretical conceptions of interference with the functions of government. Regard must be had to substance and direct effects. And, where it merely appears that one operating under a government contract or lease is subjected to a tax with respect to his profits on the same basis as others who are engaged in similar businesses, there is no sufficient ground for holding that the effect upon the government is other than indirect and remote. * * *" Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 627, 82 L.Ed. 907.

taxing power of a state is limited to persons and property within, and subject to, its jurisdiction, and the same rule applies to the taxing power of a territory. * * *'"

Proceeding upon and from this premise, it attacks the Murphy case, supra, as wrongly decided, and the opinion as basically unsound. Insisting that the theory of appellee and of the court below, that because the land was not paid for with money but was donated "it was not purchased" within the constitutional provision, is wholly untenable, it urges upon us that every fact in the case leads to, indeed compels, the conclusion that exclusive legislative jurisdiction over the property from which the oil and gas comes was vested in the United States, and that the privilege taxes imposed by, and sought to be collected under, the severance statutes are, therefore, without legal basis.

As to the contention that one of the considerations for the lease was the agreement of lessee to pay the taxes and that appellants cannot take the benefits of the lease without also accepting and discharging its burdens, appellant, citing in support United States v. Wooten, 10 Cir., 40 F.2d 882, Domenech v. National City Bank, 294 U.S. 199, 55 S.Ct. 366, 79 L.Ed. 857, United States v. County of Allegheny, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209, and pointing to the express language of clause (k) of the lease to pay when due all taxes lawfully assessed and levied, insists that it applies to, and only to, taxes validly assessed; that the state, being without legislative jurisdiction with respect to Barksdale Field, is without authority to assess the taxes in question here; and that, therefore, the clause in the lease cannot, and does not, apply.

Without undertaking to canvass or discuss the claimed errors in the conclusions of the Supreme Court in the Murphy case and of the district judge in this one, we will content ourselves with saying that we agree with the result reached in both cases, and, that for the reasons

hereafter briefly stated, we are of the clear opinion that the judgment appealed from was right and must be affirmed.

Whatever may be said of the abstract correctness of appellants' contentions, we think it quite clear that, as applied to this case they are all based upon the wholly incorrect assumption that the severance taxes in question represent an attempt on the part of the State of Louisiana to exercise legislative and executive jurisdiction over the lands in question by levying and collecting taxes upon property of the United States contrary to the provision of Act No. 12 of 1892, LSA–R.S. 52:1: "The United States shall have exclusive jurisdiction over the property during the time that the United States is the owner or lessee of the property. The property shall be exempt from all taxation, assessments, or charges levied under authority of the state."

That this is a wholly incorrect assumption is we think plainly shown in the language of the statute under which the tax is laid, note 1, supra.

Article 631 provides that the taxes are levied on all natural resources severed from the soil or water. Article 632 provides that taxes shall be paid by the owner at the time of the severance, and become due and payable quarterly as herein provided. Article 634 provides, "(3) 'Severed' means the point at which the natural resources are severed from the surface of the earth." Article 635 provides that every person severing any natural resources shall within thirty days thereafter file with the collector a statement under oath of the business conducted by him during the last quarter, and at that time shall pay the tax.

■■ It thus appears that the object and purpose of the general severance tax and its effect is not to levy a tax upon the lands included in the base or upon the oil or gas while a part of the base. The tax is expressly made to apply not while the oil or gas is in the earth but when it is severed from its surface, and then it obliges the person

severing to file a statement of his business and to pay the tax. In Louisiana, as is well known, there is no ownership of oil and gas in place, and neither in theory nor in fact is the tax here in question imposed upon it while it is a part of the soil or ground. Only after it reaches and is severed from the surface and becomes personal property does the tax fall upon the severer.

Putting to one side all the refinements which have attended the long struggles over jurisdiction,[4] as instanced in the cases, and over the effort to throw over private operations the protective mantle of governmental immunity, all that is presented for decision in this case is whether a severer of oil and gas, who, if he had taken it from any other land in the state, would unquestionably be liable under the general laws of the state for the severance tax, can carve out of the fact, that it came from land which was a part of Barksdale Field, an exemption for himself against having to pay the tax on severing the oil and gas from the surface and appropriating it to his own use. For the same reason that the statute under which the exaction is made is a general excise statute, not directed at any particular person or property but at all persons who are severers, it cannot be said that the provision in the lease obliging the lessees, as one of the considerations for it, to pay the taxes, was not fully effective.

In short, the provision must and will be construed so as to give it effect and as saying in effect that if, under the general laws of the state, the operator would be liable, he cannot draw around himself a cloak of immunity because the United States is lessor, but must, as a part of the consideration for the lease and his obligation under the statute, pay the taxes which the severance tax statutes impose. Cf. Superior Oil Co. v. Fontenot, 5 Cir., 213 F.2d 565.

The judgment was right. It is affirmed.

4. Cf. Offutt Housing Co. v. County of Sarpy, 76 S.Ct. 814.