RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF P. R., Respondent; TEÓDULO LLAMAS MUÑIZ, Intervener.

No. 136.   Argued November 14, 1947.—Decided July 9, 1948.

*Luis Negrón Fernández, Attorney General,* and *Carlos Santana Becerra, Assistant Attorney General,* for petitioner. *Clemente Ruiz Nazario* and *Francisco L. San Miguel,* for the intervener, plaintiff in the main action.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

Claiming to be authorized by the provisions of Act No. 175 of May 15, 1943, the Treasurer of Puerto Rico levied the tax known as "Victory Tax" on the income derived by Mr. Teódulo Llamas from the moving picture exhibition business in thirteen theaters owned and operated by him, during the periods from January 1 to February 28, 1943, from March 1 to June 30, 1943, and from July 1 to December 31, 1943.

The taxpayer Llamas paid the tax, requested the return thereof, which was denied, and then resorted to the Tax Court and alleged: (*a*) that the income on which the tax had been levied was not taxable, since it was not determinable and was obtained from contracts of purchase and sale in which the taxpayer acted as a contracting party, the income

derived from such contracts not being subject to taxation by express provision of said Act No. 175; and (b) because if it were held that said income was taxable, the said Act would be void, inasmuch as it establishes a discrimination against the taxpayer and denies to him the equal protection of the laws, since the victory tax is not collected from artificial persons who are engaged in that same business.

The sum claimed, including interest and administrative fines, amounts to $8,590.04.

The Treasurer has asked us to review and set aside the decision of November 20, 1946, whereby the Tax Court sustained the complaint in all its parts, and he bases his petition for review on the alleged commission of the following errors:

1. Because despite the fact that the Tax Court found that the income of the taxpayer was not derived from contracts of purchase and sale, expressly exempt by law, it held that the income in this case was not taxable, as it was not derived from any of the sources of income expressly mentioned in § 1 of Act No. 175.

2. The respondent tribunal erred in holding that the intention of the lawmaker was to levy the tax on the net income and not on the gross receipts except on the amount of certain gross income.

3. The respondent tribunal erred in holding that if the income of the intervener were considered taxable, it would render the Act unconstitutional and void.

I

■■ Section 1 of Act No. 29 of December 7, 1942, as amended by Act No. 175 of May 15, 1943 (Sess. Laws, p. 630), provides:

"Section 1.—A tax of five (5) per cent upon the *gross income of every individual,* in excess of fifteen dollars and five cents ($15.05) a week, for interest, rents, salaries, wages, day wages, fees, donations, compensations, remunerations, commissions, premiums, dividends, benefits in partnerships, whether

civil or commercial, annuities, *and any other income of whatever nature that is in cash, is determinable, and is not obtained from transactions in connection with contracts of purchase and sale* in which those who receive it may have acted as contracting parties, or from reimbursements, returns of deposits, liquidations, inheritances, loans, payments on loans, and *other similar operations,* is hereby levied, and shall be collected and paid in addition to any other tax levied by the Income Tax Act of 1924, and up to six (6) months after the cessation of hostilities between the United States of America and Germany, Italy, and Japan. . . . By *gross income* shall be understood every sum of money derived from the sources above enumerated as subject to taxation which is actually received by the taxpayer, or deposited or assigned in his favor or for his benefit. . . . .

"The word 'individual' as used in this Act shall mean a natural person and shall include: etc." (Italics ours.)

Said § 1 further provides the following:

"In the case of rents, there shall be deducted also as an exemption any amount actually paid as interest for liens on the property producing the rent. Of the income subject to taxation by this Act there shall be deducted also, as exemptions, the amounts received as compensation for labor accidents; scholarships, the sums paid by the taxpayer during the taxable year for premiums on his life insurance policies, or on the life insurance policies of his wife or children, and on insurance policies against accidents, or for educational purposes, up to an aggregate insurance of twenty-five thousand (25,000) dollars; etc."

We agree with the petitioner and with the Tax Court that the income obtained by the intervener from his motion picture business is not income derived from contracts of purchase and sale between the person operating the motion picture business and the persons who purchase the tickets to attend the show. For a contract of purchase and sale to exist it is necessary that one of the parties bind himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same. Section 1334, Civil Code, 1930 ed.; Manresa, *Comentarios al Código Civil Español,* vol. X, p. 123. The juridical relation

between the operator of a moving picture show and the public which attends the performance is that arising from a contract of lease of things or services, in which one of the parties thereto binds himself to give to the other the enjoyment or use of a thing for a specified time and a fixed price or to render a service for a specified price. Sections 1433 and 1434, Civil Code, 1930 ed. The state and federal courts [1] have considered the exhibition of moving pictures not as a purchase and sale transaction but as an entertainment, sport, or amusement similar to a circus performance, boxing, or baseball game.

## II

█ Since we have already decided that the income obtained from the moving picture exhibition business can not be considered as derived from "contracts of purchase and sale in which those who receive it may have acted as contracting parties," let us see now if said income is comprised within any of the other exceptions established by § 1 of the Act, *supra*. Those exceptions cover any income that is in cash, determinable, and is not derived from (*a*) reimbursements, (*b*) returns of deposit, (*c*) liquidations, (*d*) inheritances, (*e*) loans, (*f*) payments on loans, and (*g*) other similar transactions. It is evident that the income derived from said motion picture business does not fall within any of the exceptions specifically enumerated under letters (*a*) to (*f*) inclusive.

## III

██ Is the gross income derived from the exhibition of moving pictures comprised within the income subject to the payment of the victory tax? That is the main question which we should decide.

---

[1] *Dun & Bradstreet* v. *City of New York*, 11 N.E. 2d 728; *Andersen* v. *City of N. Y.*, 15 N.Y. Supp. (2) 155; *Mutual Film Corp.* v. *Ind. Com. of Ohio*, 236 U.S. 230, 247; *Fox Film Corp.* v. *Trumbull*, 7 Fed. 2d 715, *appeal dismissed* 269 U. S. 597; *Paramount Pictures* v. *Langer*, 306 U. S. 619; *Eureka Productions* v. *Lehman*, 302 U. S. 634; *Marrone* v. *Washington Jockey Club*, 227 U. S. 633.

Pursuant to § 1 of the Victory Tax Act, *supra*, the tax of 5 per cent is levied "upon the gross income of every individual," in excess of $15.05 weekly, provided said income is obtained from one of the fourteen sources—interest, rents, salaries, wages, day wages, fees, donations, compensation, remunerations, commissions, premiums, dividends, benefits in partnerships, whether civil or commercial, annuities— specifically mentioned in said Section and on "any other income of whatever nature that is in cash, is determinable and is not obtained from transactions in connection with contracts of purchase and sale. . . or from reimbursements, returns of deposits, liquidations, inheritances, loans, payments on loans, and other similar operations." "Gross income," pursuant to this Act, is every sum of money derived from the sources enumerated in § 1, which is actually received by the taxpayer or deposited or assigned in his favor or for his benefit.

The respondent tribunal, applying the rule of *expressio unius est exclusio alterius*, reached the conclusion, which it characterized as unavoidable, that the income received by the taxpayer Llamas, was not taxable; that the Victory Tax Act "is applicable only to net income of the special nature enumerated in § 1 thereof"; and that if by judicial construction said tax is extended to the income obtained from the moving picture exhibition business "we would have to permit the deduction of all the ordinary and necessary expenses incurred by the individual taxpayer for the obtention of said income," since "this would be the only way to put his income from such sources on the same level as the net income of a special nature enumerated in the law."

The petitioning Treasurer admits that the income of taxpayer Llamas is not derived from any of the fourteen sources specifically enumerated in the Act, but he insists that said income is subject to taxation, since the lawmaker has so provided by adding immediately after the enumeration of the fourteen sources of income the phrase "and any other income

of whatever nature that is in cash, is determinable, and is not obtained from transactions in connection with contracts of purchase and sale, etc."

The taxpayer, intervener herein, relying on the maxim "*ejusdem generis*," contends that "the only interpretation which should be given to the phrase 'and any other income of whatever nature that is in cash' is that said income must be of a like, analogous, or similar nature as that of the fourteen (14) specific terms or things which precede it and not of any other which might be different or distinct from them in their essence or scope."

We do not agree with the construction given by the intervener to the statute, nor with the assertion that the maxim "*ejusdem generis*" is applicable to the case under consideration.

In 28 C. J. S. p. 1049, we find the following definition:

"*Ejusdem generis*. Literally 'Of the same kind or species.' A well-known maxim of construction, sometimes called Lord Tenterden's Rule, to aid in ascertaining the meaning of a statute or other written instrument, the doctrine being that, *where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind,* as in the case of a 'clean-up' phrase, such as the term 'otherwise' with respect to a classification which immediately precedes it." (Italics ours.)

In 2 Sutherland Statutory Construction, 3d edition, p. 400, the conditions which should exist in order that the doctrine be applicable are enumerated, thus:

"The doctrine applies when the following conditions exist: (1) the statute contains an enumeration by specific words: (2) the members of the enumeration constitute a class; (3) the class is not exhausted by the enumeration; (4) a general term follows the enumeration; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires."

See *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870, 877.

We would agree with the intervener as to the applicability of the maxim *"ejusdem generis"* if the lawmaker, after enumerating the fourteen sources of income subject to the payment of the tax, had added the words "and any other income that is in cash." If that were the language of the statute, we would have to agree, pursuant to the above maxim, that the phrase "any other income" would necessarily refer to income of a like or similar nature as that of the fourteen sources of income specifically enumerated in the statute. However, the lawmaker after specifying fourteen sources of taxable income, extended the victory tax to "any other income of *whatever* nature." It would be arbitrary and absurd to hold that where the lawmaker stated that the tax should be levied on the fourteen sources of income specifically enumerated and, in addition, on "any other income of whatever nature," what he actually meant to state was that the tax should be levied on "any other income of the same nature," as those previously specified. Such a construction would be repugnant to the clear and precise language of the statute.

We have already seen that the phrase *"ejusdem generis"* literally construed means "of the same nature or species." In *Diccionario de la Lengua Castellana* we find the following definitions:

"*Naturaleza.* The essential characteristic or constitution of a particular thing. Species, genus, class.

"*Especies.* A group of common characters, whereby some objects resemble others.

"*Género.* (From the Latin *genus* or *generis.*) A specie. Nat. Hist. A group of species exhibiting a certain number of common characteristics.

"*Otro, otra.* (From the Latin *alterum,* accusative of 'alter.') Adj. Applied to a person or thing distinct from the one already mentioned."

We have to assume that the words "any other income of whatever nature" have been employed in its primary and general acceptation. Section 29, Law of Evidence, § 391 of

the Code of Civil Procedure, 1933 ed. Therefore, taking said words in their primary grammatical acceptation, we have to reach the conclusion that the legislative intention was to subject to the payment of the Victory Tax not only the fourteen kinds of income specifically mentioned in the statute but also any other income having a different nature or kind than that of the fourteen classes expressly mentioned. The intervener argues that said construction would be correct if the lawmaker had used the phrase "and any other income of a *different* nature." This argument lacks force. Adding the word "different" to the phrase which we are construing would create a redundance, since the words "any other income of whatever nature" can mean nothing else than income of a different nature than that of the other incomes specifically enumerated.

The Tax Court erred in holding that the Victory Tax Act was not applicable to the income derived from the moving picture exhibition business.

## IV

■■ The taxpayer, intervener herein, in the complaint filed in the Tax Court and in the briefs filed in this Court, contends that Act No. 175 of 1943, in contravention of the provisions of § 2 of the Organic Act that "no law shall be enacted in Puerto Rico which shall . . . deny to any person therein the equal protection of the laws," and that "the rule of taxation in Puerto Rico shall be uniform," establishes an unlawful discrimination against individuals or natural persons and in favor of corporations engaged in the same kind of businesses. The intervener urges that a classification based on the mere distinction between individuals and artificial persons is clearly arbitrary, unreasonable, discriminatory, void, and unconstitutional; that we are not dealing here with different classes but only one class—that of operators or exhibitors of public spectacles; that the law levies a tax on some within said class, the individuals, while it exempts

others, the corporations, said classification not being connected with the object of the tax.

In support of his contention, the intervener taxpayer has invoked the following decisions:

*Quaker City Cab Co.* v. *Penna*, 277 U. S. 389, 72 L. ed 927; *Frost* v. *Corporation Commission*, 278 U. S. 515, 553, 73 L. ed. 483–491; *Atchison, etc. Railroad Co.* v. *Matthews*, 174 U. S. 96, 43 L. ed. 909; *Redfield* v. *Fisher*, 135 Or. 180, 292 Pac. 813 (writ of certiorari denied in 284 U. S. 617), and *Gamble–Robinson Fruit Co.* v. *Thoresen*, 204 N. W. 861, 42 A.L.R. 1039.

The decisions which we have just cited are not applicable to the case at bar. Unlike the cited cases, the present one does not deal with the levy of a special tax upon a certain business—the moving picture exhibition business—exempting the corporations from the tax and levying it exclusively on individuals engaged in that business. There is involved, as was stated in *Rivera* v. *District Court*, 62 P.R.R. 491, the levy "of a certain additional income tax to which the name of Victory Tax is given."

Upon affirming the judgment of this Court in *Rivera* v. *District Court, supra*, the U. S. Circuit Court of Appeals said (146 F. 2d 461, 465):

"While it has often enough been recognized that a statutory classification may be so invidious and lacking in rational basis as to offend the constitutional guaranties, the cases are few and far between in which a tax law has actually been invalidated on this ground. In the tax field, more than in any other, 'legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.' (Citing authorities.)"

In considering the levying of a tax "in addition to any other tax levied by the Income Tax Act of 1924," making it

applicable to individuals and not to corporations, it is possible that the Legislature had in mind the fact that the Income Tax Act divides the taxpayers into two classes: (*a*) individuals and (*b*) corporations and partnerships, levying on each of said classes different tax rates and granting to each of them different deductions and credits and furthermore that in addition to the income tax which every corporation is bound to pay its stockholders must pay as individuals, the tax corresponding to the dividends received from the corporation. This being so, we must reach the conclusion that the classification established by the Victory Tax Act is consistent with the equal protection clause, since it is based on a true and substantial difference which has a reasonable connection with the subject matter of the legislation. We also hold that this law does not conflict with the provision of the Organic Act, that "the rule of taxation in Puerto Rico shall be uniform." This clause does not exact intrinsic uniformity; it only requires geographical uniformity in all Puerto Rico as provided by this Act. *South Porto Rico Sugar Co.* v. *Buscaglia*, 154 F. 2d 96; *Ballester* v. *Court of Tax Appeals*, 142 F. 2d 11; *Buscaglia* v. *Tax Court, Pérez Vahamonde, Intervener*, 68 P.R.R. 322.

## V

We shall now consider the last question raised by the Treasurer, to wit, whether the Tax Court erred "in holding that the lawmaker only intended to tax such *net income* as is mentioned in the Act and it was not his intention to tax the gross receipts but only the amount of certain gross income."

We should bear in mind that § 1 of the Act, *supra*, provides that "By gross income shall be understood every sum of money derived from the sources above enumerated as subject to taxation which is actually received by the taxpayer, or deposited or assigned in his favor or for his benefit."

Section 11 of the same Act provides that "The Treasurer of Puerto Rico shall organize, direct, and, through rules and regulations for the purpose, administer the execution of this Act."

On August 13, 1943, the Treasurer issued certain regulations for the execution of the Act. Rule No. II contains a definition of "gross income" in the same terms in which it appears in § 1 of the Act, *supra*. Said Rule No. II also pro-' vides the following:

"OVERHEAD EXPENSES OR OVERHEAD CHARGES. (Overhead expenses or overhead charges are defined as those comprised in general expenses, outlays, etc., in any business which can not be charged off as exclusively belonging to any particular part of the work or product. The word overhead is defined as meaning the general charges in an industrial or financial enterprise that can not be attributed to any particular department or product. *Excluding the cost of the materials and labor.*"

"(C) The expenses incurred by the taxpayer, although necessary or indispensable to be able to obtain the income, are not deductible for the purpose of the 'gross income'; . . ."

Rule No. XIII entitled "Deductions allowed in computing the taxable gross income" enumerates the deductions that pursuant to the Act are allowed to the taxpayer. Said deductions are: (1) that of $15.05 weekly provided by the Act; (2) interest on liens affecting the property which produces the rent; (3) the premiums paid on policies of life insurance, or against accidents or for educational purposes up to an aggregate insurance of $25,000. Rule No. XIV enumerates the kinds of income received by the taxpayer which are not subject to the tax, and which are the same as those specified in § 1 of the Act, *supra*.

From the evidence introduced in the respondent tribunal it appears that in determining the taxable gross income the Treasurer allowed deductions to the appellant taxpayer for various items such as light, ice, rent, equipment repairs, water, salaries, telephone, materials, transportation of pictures, tickets, coal, insurance of employees, uniforms for

employees; and that the same officer refused to allow deductions for taxes, attorney's fees, advertisements, gifts, donations, municipal fees for signs, insurance against public liability, interest on debts, depreciation of buildings and equipment.

The Tax Court, after considering all the evidence introduced, said:

"It is difficult for us to see why the Treasurer allowed some deductions and rejected others. He allowed the appellant to deduct expenses for light, rent, water, salaries, etc., and did not allow him the items corresponding to advertisements, taxes, depreciation of buildings and equipment, municipal patents, insurance, etc. He did not reject them because he did not consider them as ordinary and necessary expenses incurred in the operation of the business, but because he did not consider them as deductible."

Bearing in mind the definition of "gross income" contained in § 1 of the Act, *supra*, and the deductions specifically allowed the taxpayer by the same Act, we can not agree with the respondent tribunal that the Treasurer acted unlawfully in refusing to allow the deductions already mentioned. We have failed to find in the Act under consideration or in the Regulations any provision which imposes on the Treasurer the obligation to allow such deduction. The duty of the Treasurer is to allow the taxpayer all the deductions and extensions granted by the Act. Since the record does not contain any evidence which shows that the Treasurer failed to comply with that duty, the computation made by that officer must be respected.

The decision under review should be reversed and a new judgment rendered instead dismissing the complaint.

Mr. Justice De Jesús did not participate herein.