M. E. S. BRUNELLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20780. Promulgated November 30, 1950.

*Scott P. Crampton, Esq.*, for the petitioner.
*Sanford M. Stoddard, Esq.*, for the respondent.

## OPINION.

Murdock, *Judge:* Section 116 (j) of the Internal Revenue Code was added by section 125 (a) of the Revenue Act of 1943. It provides that there shall be excluded from gross income and exempt from tax under Chapter 1:

(j) In the case of a clerk or employee in the Foreign Service of the United States, amounts received as cost-of-living allowances under authority of section 3, as amended, of the Act of February 23, 1931; and in the case of an ambassador, minister, diplomatic, consular, or Foreign Service officer, amounts received as post allowances under the authority of section 12, as amended and renumbered, of the Act of May 24, 1924; and in the case of other civilian officers or employees of the Government of the United States stationed outside continental United States, amounts received as cost-of-living allowances in accordance with regulations approved by the President.

It has been stipulated that the petitioner was a civilian officer or employee of the Government of the United States stationed outside continental United States. The question is whether the amounts here in question were "amounts received as cost-of-living allowances in accordance with regulations approved by the President." The parties present the question as a novel one.

The addition of (j) to section 116 was due to a Senate Amendment. The Report of the Committee on Finance on the Revenue Bill of 1943, Report No. 627, 78th Congress, 1st Session, at page 24, contains the following with reference to the new provision:

### COST-OF-LIVING ALLOWANCES FOR FEDERAL EMPLOYEES IN FOREIGN SERVICE

The committee bill provides a new subsection to section 116 of the Internal Revenue Code to exempt from gross income the cost-of-living allowances granted personnel of the Government assigned for foreign duty.

Relief is essential to Government personnel stationed in foreign countries who are having a very difficult time and who are reported to be experiencing in the face of rapidly rising living costs a diminution from 22 to 59 percent of the individual amounts it is now possible to provide personnel to assist in meeting official requirements. Under present regulations inclusion of these allowances is required and the income tax thus nullifies in large measure the efficacy of the allowances to meet official expenses incurred by personnel on foreign assignment, and granted in order to meet official requirements.

The personnel of the Government do not choose the posts to which they are assigned, and they have no control over the costs which there are experienced. They are sent to the posts because highly important duties of the Government must there be accomplished. Payment of allowances to meet the extra costs of living at individual posts is indistinguishable from the payment of allowances to defray the expenses of operation of the establishment, the official entertainment which is necessarily undertaken, the travel personnel is ordered to perform or the rental paid for quarters appropriate to house essential activities.

The Secretary of State has reported that at posts in the countries now associated with us in common war against the enemy and in those neutral states of supreme importance to us where the Foreign Service is performing a vitally important part of the Nation's war effort, the cost of living continues to mount higher and higher and the financial difficulties of our officers and employees grow progressively worse, threatening the efficiency and morale of this important group of personnel. The Department has neither the authority nor the funds to compensate such personnel for the extra burden which falls upon them by reason of the tax levied on cost of living allowances. The situation is acute and as the allowances are to meet official needs as distinguished from personal requirements, the exclusion of such allowances from tax consideration for this class of personnel is in the public interest.

The Commissioner argues from the above report and from various statutes which he says authorize "cost-of-living allowances," that the payments here in question were not of the kind which Congress intended to exempt; Congress intended to grant the exemption to assist personnel in meeting official requirements at posts to which they have been sent; the petitioner was merely given additional salary because living costs in Alaska were high, and that part of his salary should not be exempt any more than any other part of his salary. There is no showing that the petitioner was sent to any post or that he had to operate any establishment involving official entertainment or anything of the kind.

Section 3, as amended, of the Act of February 23, 1931, referred to in section 116 (j) authorizes the Secretary of State "at posts where in his judgment it is required by the public interests for the purpose of meeting the unusual or excessive costs of living ascertained by him to exist, to grant compensation to clerks assigned there in addition to the basic rates herein specified."

Section 12, as amended and renumbered, of the Act of May 24, 1924, referred to in section 116 (j), authorizes the Secretary of State to grant "at all posts allowances for living quarters, heat, light, fuel, gas, and electricity, and at all posts where. in his judgment, it is required by the public interests for the purposes of meeting unusual or excessive costs of living ascertained by him to exist, to grant post allowances to clerks * * * and other employees of the Foreign Service."

Section 901 (2) of the Foreign Service Act of 1946 authorizes the Secretary of State to grant to any officer or employee of the Service who is a citizen of the United States cost of living allowances whenever the Secretary shall determine, *inter alia,* that the cost of living at a post abroad is proportionately so high that an allowance is necessary to enable an officer or employee of the service at such post to carry on his work efficiently.

The legislative history of section 116 (j), and the words of the statutes referred to above, give considerable support to the contention

of the Commissioner that Congress did not intend to exempt mere salary increases but only a limited class of payments that had a close tie-in with the efficient performance of official duties or requirements. Furthermore, payments, to be exempt under the latter part of section 116 (j), must be "in accordance with regulations approved by the President." The petitioner has been unable to point to any regulation approved by the President which in any way relates to the payments here in question. The Court is not aware of the existence of any such regulation. The record does not show that there is any error in the determination of the Commissioner.

Reviewed by the Court.

*Decision will be entered for the respondent.*