EDWARD L. DAVIS AND BARBARA T. DAVIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58168. Filed May 29, 1958.

*S. Stephen Nakashima, Esq.*, for the petitioners.
*Leslie T. Jones, Jr., Esq.*, for the respondent.

This proceeding involves deficiencies in income tax of petitioners for the years 1951 and 1952 in the respective amounts of $132.80 and $90.34. Petitioners filed timely claims for refund in the amount of $782.66 for the year 1951, and $917.96 for 1952.

The primary issue is whether petitioners are immune from Federal income tax on the amounts received for services rendered in the taxable years involved under contracts of employment with the Government of American Samoa. In the event it is held petitioners are not immune, are the amounts paid to Edward L. Davis in the respective taxable years as territorial post differential, excludible under section 116 (j) of the Internal Revenue Code of 1939?

## FINDINGS OF FACT.

The stipulated facts are found accordingly.

Petitioners are husband and wife residing at 2366 Ramona Drive, Palo Alto, California. Their joint returns for the periods involved were filed with the district director of internal revenue at Baltimore, Maryland, on the cash basis.

As Barbara Davis is involved only by reason of filing a joint return, Edward L. Davis will be referred to as the petitioner.

Between November 11, 1949, and July 3, 1954, petitioner was employed by the Government of American Samoa. During such period petitioner and his wife resided in Samoa. The contracts of employment between petitioner and the Government of Samoa are attached to the stipulation and are incorporated here by this reference.

Petitioners were at all times citizens of the United States and during the taxable years in question their income from sources within American Samoa exceeded 80 per cent of their total income, and more than 50 per cent of such income was earned for personal services rendered to the Government of American Samoa, a possession of the United States of America.

Petitioner was employed by and performed duties for the Government of American Samoa during the entire term of his employment, and for such services he was paid the sum of $5,564.55 in 1951, and $5,769 in 1952.

During the years 1951 and 1952, petitioner was paid a territorial post differential in the amount of $674.96 and $752.84, respectively. This differential was discontinued by the Government of American Samoa on July 18, 1952. Such sums were not reported on the joint returns filed for the years 1951 and 1952.

Petitioner's original position with the Government of American Samoa was as Assistant Treasurer and his salary was $4,500 per year. Under the second contract of employment commencing September 1, 1952, petitioner was Assistant Director of Administration and his salary was $6,400 per year. He received accrued sick and leave time each pay period. His salary was paid from commingled funds obtained from the United States and from local revenues. Petitioner's salary grade was that of a GS–11.

In Samoa, petitioner and his wife lived in a two-bedroom home. Originally these accommodations were rent free, but later petitioner paid a rental of $55 per month.

On July 1, 1951, the administration of American Samoa was transferred from the Navy Department to the Interior Department, and petitioner commenced receiving a cost-of-living allowance. On August 24, 1952, such allowance was discontinued and petitioner's basic salary was increased to give him the same dollar income.

In 1951 and 1952, petitioner paid income tax on the salary he received from the Government of American Samoa.

In the notice of deficiency the Commissioner increased petitioner's gross income by the amounts of the territorial post differential received in the respective taxable years with the following explanation:

The territorial post differential which is paid for services at posts having conditions of environment which differ substantially from conditions of environment in the States is considered to be additional compensation paid as a recruitment incentive and, therefore, is includible in gross income and subject to tax.

### OPINION.

LeMire, *Judge:* Petitioner contends that the amounts he received in the taxable years in question from the Territorial Government of American Samoa are exempt from income tax under section 251 of the Internal Revenue Code of 1939, as amended. The provisions of such section, so far as here pertinent, are set forth in the margin.[1] The purpose of the addition of (j) to section 251 as set forth in the Report of the Ways and Means Committee on the Revenue Bill of 1950, H. Rept. No. 2319, 81st Cong., 2d Sess., p. 58, is as follows:

(W) *United States Employees in the Possessions.*

Section 251 of the Internal Revenue Code exempts from tax the income of individual citizens and domestic corporations from sources outside the United States if 80 percent or more of their gross income is derived from sources within a possession of the United States and 50 percent or more of their gross income is derived from the active conduct of a trade or business within a possession of the United States. For the purposes of section 251, however, United States possessions do not include the Virgin Islands. Individuals are entitled to this exemption whether they engage in a trade or business on their own account or as employees or as agents. The exemption has been interpreted as applying to military and civilian personnel employed by the United States.

---

[1] SEC. 251. INCOME FROM SOURCES WITHIN POSSESSIONS OF UNITED STATES.

(a) GENERAL RULE.—In the case of citizens of the United States or domestic corporations, satisfying the following conditions, gross income means only gross income from sources within the United States—

(1) If 80 per centum or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section), for the three-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States ; and

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) If, in case of such citizen, 50 per centum or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d). DEFINITION.—As used in this section the term "possession of the United States' does not include the Virgin Islands of the United States, and such term when used with respect to citizens of the United States does not include Puerto Rico.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(j) EMPLOYEES OF UNITED STATES.—For the purposes of this section, amounts paid for services performed by a citizen of the United States as an employee of the United States or any agency thereof shall be deemed to be derived from sources within the United States.

Military and civilian personnel of the Government who are citizens of the United States are not exempt from income tax when they are stationed in any other part of the World, and their exemption while stationed in the possessions is not in any way related to the original purpose of section 251, which was to encourage American businesses in the possessions.

Section 216 of your Committee's bill eliminates the special treatment accorded the military and civilian employees of the United States Government and its agencies who are stationed in the possessions. Wages paid to them in taxable years beginning after December 31, 1949 for services to the United States or its agencies performed in such possessions will not be considered income from such possessions, in determining whether they are entitled to the benefits of section 251 of the Code, and will be subject to tax as income from sources within the United States. Withholding on such wages will apply effective January 1, 1951. See also H. R. 2013, Committee of Ways and Means 81st Cong., 2d Sess., page 103 and S. R. 2375 Finance Committee, 81st Cong., 2d Sess., page 100.

There is little dispute about the facts. It is stipulated that petitioner is a citizen of the United States and that American Samoa is a possession of the United States.

The record also shows that the petitioner entered into two agreements with the Government of American Samoa. In the first agreement dated November 11, 1949, petitioner was employed for a term of 2 years in the position of assistant to the Treasurer of American Samoa. Under the second agreement, the petitioner was employed as Director of Administration for a term of 2 years commencing on the 1st day of September 1952. Both contracts were executed by the then Governor on behalf of the Government of American Samoa. The agreements contain many terms and conditions which are not material to the issues presented for decision.

A brief summary of the historical facts relating to the Samoan Islands shows that on February 16, 1900, England and Germany renounced whatever claims they had to the Samoan Islands. On February 19, 1900, the President of the United States, by Executive Order No. 125–A, directed the Navy to assume control and to administer the affairs of the Islands.

On February 20, 1929, Congress by Joint Resolution accepted the cession of the Samoan people's interest in the Islands to the United States. Said resolution, *inter alia,* provided:

(c) Until Congress shall provide for the government of such islands, all civil, judicial, and military powers shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct; and the President shall have power to remove said officers and fill the vacancies so occasioned. (45 Stat. 1253, 48 U. S. C. A. 1431 (a)).

This situation continued unchanged until the President, by Executive Order 10624, dated June 29, 1951, transferred the administration of the Government of American Samoa from the Secretary of the Navy to the Secretary of the Interior effective as of July 1, 1951. It was further provided that when the transfer was effected the Secre-

tary of the Interior "shall take such action as may be necessary and appropriate and in harmony with applicable law for the administration of civil government in American Samoa." Executive Order No. 125–A was specifically revoked. (1 U. S. Code and Administrative Service 1951, p. 1052.) That situation exists at the present time. Congress has not provided a government for American Samoa, but has recognized the government established under the Executive Orders.

The question for decision is whether the amounts paid to petitioner in the taxable years 1951 and 1952 were for services performed as "an employee of the United States or any agency thereof" as used in section 251 (j) of the 1939 Code.

Section 251 contains no definition of the clause "as an employee of the United States or any agency thereof."

The Internal Revenue Code does not define the term "agency," but does define the term "United States" when used in a geographical sense. Sec. 3797 (a) (9).[2]

In *Hooven & Allison Co.* v. *Evatt*, 324 U. S. 652, the Supreme Court in referring to the term "United States" at page 671 said:

The term "United States" may be used in any one of several senses. It may be merely the name of a sovereign occupying the position analogous to that of other sovereigns in the family of nations. It may designate the territory over which the sovereignty of the United States extends, or it may be the collective name of the states which are united by and under the Constitution.

We think the term "United States" as used in section 251 (j) is used in a "political" rather than a "geographical" sense, and as comprising all possessions where the sovereign power is in the United States. To construe the term otherwise would be manifestly incompatible with the intent and purpose of the provisions of section 251.

The petitioner argues that the term "agency" as used in subsection (j) of section 251 must be taken to be used in the sense that the word is defined in the Administrative Procedure Act. (5 U. S. C. A.). Section 1001 (a) of that Act in defining the term "agency" excludes the governments of possessions and territories. We find this contention is unsound. The term "agency" as defined in section 1001 (a) is specifically limited in its scope to Chapter 19 of the Administrative Procedure Act which has no application to the revenue statutes. Furthermore, the two acts are not *in pari materia.*

The respondent contends that the term "agency" is used in its ordinary and customary meaning, and that the Government of American

---

[2] SEC. 3797. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

   \*        \*        \*        \*        \*        \*        \*

    (9) UNITED STATES.—The term "United States" when used in a geographical sense includes only the States, the Territories of Alaska and Hawaii, and the District of Columbia.

Samoa, which is under the control and administration of the Secretary of the Interior, a department of the Executive Branch of the Federal Government, is an agency of the United States. *Domenech* v. *National City Bank*, 294 U. S. 199; *Bradford* v. *Chase Nat. Bank of City of New York*, 24 F. Supp. 28. Cf. *Robert W. Teskey*, 30 T. C. 456.

In the *Domenech* case, *supra*, the Supreme Court at page 204 states:

an island possession, like a territory, is an agency of the federal government, having no independent sovereignty comparable to that of state * * *.

In the *Bradford* case, *supra*, the District Judge of the Southern District of New York stated that the Philippines, prior to the independence, was an agency of the United States.

We are referred to no decisions and independent research has revealed no authority to the contrary, and we think the cited cases support the respondent's position.

The Revenue Service has issued a ruling to the effect that a United States citizen employed by the Government of American Samoa is considered an employee of the "United States or any agency thereof" within the meaning of section 931 (i) of the 1954 Code and that the amounts received for services performed for such government are subject to Federal income tax. (Rev. Rul. 127, 1956–1 C. B. 323). Section 931 (i) of the 1954 Code is identical in substance with section 251 (j) of the 1939 Code, here in question. While such ruling is not controlling it is not without weight and is entitled to respectful consideration. *Smythe* v. *Fiske*, 90 U. S. 374, 382. We think the ruling is a reasonable and correct interpretation of the provisions of section 251 of the 1939 Code.

We hold that the amounts which petitioner received from the Territorial Government of American Samoa in the taxable years involved are taxable income under section 22 (a) of the 1939 Code.

So holding, requires a determination of the issue whether the amounts received by petitioner in the years 1951 and 1952 as cost-of-living allowances are excludible from taxation under section 116 (j) of the 1939 Code as contended by petitioner.

In the returns filed for the years involved petitioner did not report such amounts. The respondent included them in gross income as additional compensation giving rise to the contested deficiencies.

Section 116 (j) as added by section 125 (a) of the Revenue Act of 1943, is set forth below. It provides that there shall be excluded from gross income and exempt from tax under Chapter 1:

(j) In the case of a clerk or employee in the Foreign Service of the United States, amounts received as cost-of-living allowances under authority of section 3, as amended, of the Act of February 23, 1931; and in the case of an ambassador, minister, diplomatic, consular, or Foreign Service officer, amounts received as post allowances under the authority of section 12, as amended and renumbered,

of the Act of May 24, 1924; and in the case of other civilian officers or employees of the Government of the United States stationed outside continental United States, amounts received as cost-of-living allowances in accordance with regulations approved by the President.

Only the latter part of such section is applicable to the facts presented in the instant case.

In *M. E. S. Brunelle*, 15 T. C. 766, affd. 192 F. 2d 423, the various provisions of section 116 (j) were construed. With respect to the latter part of such section, we held that to be exempt thereunder the allowances must be made "in accordance with regulations approved by the President." In that case it was stated that the taxpayer pointed to no regulation approved by the President which relates to the payment involved, and that the Court was unaware of any such regulation. The record in the present case is equally deficient. The petitioner has failed to carry the burden of showing that the requirements of section 116 (j) permitting the exemption have been met. Therefore, as to this issue, the respondent's determination is sustained.

*Decision will be entered for the respondent.*