George R. BELL, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 8041.

United States Court of Appeals Fourth Circuit.

Argued April 19, 1960.

Decided April 28, 1960.

George R. Bell, pro se.

Arthur I. Gould, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and I. Henry Kutz, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before HAMLEY, Circuit Judge (sitting by designation of the Chief Justice), and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

The question here is whether one who is an employee of the Government of American Samoa is an employee of an agency of the United States within the meaning of 26 U.S.C.A. § 251(j).[1]

Petitioner, George R. Bell, was employed by the United States Navy Department in Tutuila, American Samoa, which employment was terminated by the Navy on June 29, 1951. Petitioner was then offered and he accepted employment with the Government of American Samoa and was so employed from July 1, 1951, to June 30, 1953. During this period he was paid directly by the Government of American Samoa. He is, and has always been, a citizen of the United States.

Petitioner contends that his income, consisting of salary and a cost of living allowance, received as an employee of the Government of American Samoa is exempt from taxation under Section 251 (a) of the Internal Revenue Code of 1939,[2] which section, under certain conditions, exempts from taxation the income of United States citizens arising from sources within *possessions* of the United States. There is no dispute that if employment by the Government of American Samoa is employment by "an agency" of the United States Petitioner is required to pay taxes on income derived from that source.

Before considering the contentions of the parties, a brief but informative résumé of the history of the United States relative to American Samoa is presented. It is agreed that in 1878 a treaty of friendship and commerce was ratified wherein the United States recognized the Samoan Government, 20 Stat. 704. By treaty of 1889, Germany, Great Britain and the United States recognized the independence and neutrality of the Islands of Samoa, 26 Stat. 1497. These treaties were supplanted by a treaty of 1899, proclaimed on February 16, 1900, 31 Stat. 1878, in which Germany and Great Britain renounced all claims to certain islands which now comprise American

---

1. "§ 251. Income from sources within possessions of United States

   *     *     *     *     *

"(j) Employees of United States. For the purposes of this section, amounts paid for services performed by a citizen of the United States as an employee of the United States or any agency thereof shall be deemed to be derived from sources within the United States."

2. "§ 251. Income from sources within possessions of United States

"(a) General rule. In the case of citizens of the United States or domestic corporations, satisfying the following conditions, gross income means only gross income from sources within the United States—

"(1) If 80 per centum or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section), for the three-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States; and

"(2) * * *

"(3) If, in case of such citizen, 50 per centum or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another."

Samoa, and the United States renounced all claims to other Samoan Islands.

On April 17, 1900, and July 16, 1904, the rulers of Samoa ceded absolutely all rights of sovereignty over these islands to the United States. These cessions were accepted by the President of the United States, his actions being approved by a Joint Resolution of Congress, February 20, 1929, 45 Stat. 1253, 48 U.S.C.A. § 1431a, which provided that until the Congress should provide for the government of such islands, all civil, judicial and military powers should be vested in such person or persons and exercised in such manner as the President of the United States should direct, with power in the President to remove officers and fill vacancies. The President, by Executive Order No. 125-A, had directed the Department of the Navy to exercise control over and administer the islands comprising American Samoa. Pursuant to the recommendations of a committee composed of the Secretaries of State, War, the Navy and the Interior that administrative responsibility for American Samoa be transferred to a civilian agency of the United States Government at the earliest practicable date, the President, by Executive Order No. 10264, dated June 29, 1951, to become effective July 1, 1951, 48 U.S.C.A. § 1431 note, transferred the administration of American Samoa from the Secretary of the Navy to the Secretary of the Interior, directing that the latter "take such action as may be necessary and appropriate, and in harmony with applicable law, for the administration of the civil government in American Samoa". This order has remained in effect from its date of issuance.

It is not disputed that the Government of American Samoa is headed by a Governor, appointed by the President and in whom is vested the legislative power. An island legislature called a "Fono" also exists, but its sole function is to advise the Governor on legislative matters. The Governor appoints or controls the executive officials, as well as the Samoan officials. The head of the Department of Public Works, in which department Pe-titioner was employed from July 1, 1951, to June 30, 1953, reports directly to the Governor and he, in turn, reports directly to the Secretary of the Interior.

Petitioner contends that American Samoa is not "an agency" of the United States within the contemplation of Section 251(j) of the Internal Revenue Code of 1939; that American Samoa has a fully established local government with its own Code of Laws, with Legislative, Judicial and Executive branches and taxing powers. Further, he urges that in an audit report to Congress for the fiscal year ending June 30, 1953, the Comptroller General of the United States pointed out that former United States employees who became employees of the American Samoan Government ceased to be federal employees and lost the benefits which accrue from federal employment; that, if *employment* is not federal, the employer is not a federal agency or "an agency" of the United States.

The Tax Court, following its earlier decision in Davis v. Commissioner, 1958, 30 T.C. 462, found against Petitioner stating:

"* * * We have no disposition to question the soundness of the ruling of the Chairman of the Civil Service Commission or the comments of the Comptroller General in his audit report to the effect that employees of the Government of American Samoa are not employees of the United States. It seems entirely correct to say that petitioner was not an employee of the United States Government. But we cannot accept as correct petitioner's second contention that he was not an employee of an agency of the United States. * * * *"

■ We agree with the findings and conclusions of the Tax Court. In Davis v. Commissioner, supra, the Tax Court was confronted with a situation almost identical with that here presented. The court concluded that the term "United States" as used in Section 251(j) is used in a "political" rather than a "geographical" sense, and as comprising all

possessions where the sovereign power is in the United States; that the term "agency" is used in its ordinary and customary meaning and since the Government of American Samoa is under the Department of the Interior, a department of the Federal Government, it is an agency of the United States.

The test in determining whether a governmental agency exists is stated in Lassiter v. Guy F. Atkinson Co., 9 Cir., 1949, 176 F.2d 984, 991, 21 A.L.R.2d 1313, as follows:

> "* * * The authority to act with the sanction of government behind it determines whether or not a governmental agency exists. The form the agency takes, or the function it performs are not determinative. * * *"

See also Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 1951, 188 F.2d 558, 561.

That American Samoa is a possession and dependency of the United States cannot be seriously questioned in view of the treaty of 1899 and the cession later made by the Samoan rulers. The power to govern this dependency is vested in a Governor, with the over-all administrative policy of the dependency vested in the Department of the Interior. Such government and supervision is a necessity since such dependencies have no government but that of the United States, except insofar as the United States may permit. Cincinnati Soap Co. v. United States, 1937, 301 U.S. 308, 317, 57 S.Ct. 764, 81 L.Ed. 1122. Therefore, contrary to Petitioner's contention, the fact that American Samoa has its own Code of Laws, defined branches of government and certain taxing powers is not controlling. Such self-governing local agencies are sanctioned by the United States in accord with the policy of the United States to permit and encourage self-government. Should the Secretary of the Interior, with proper sanction, desire to change the governing procedures of this possession, he need only so instruct its Governor.

Since "agency" is not defined by Section 251 of the Internal Revenue Code of 1939, we are of the opinion that Congress intended that the term be given its generally accepted meaning. The application of such meaning dictates that we consider possessions and dependencies, unless specifically excluded, within the term *agency of the United States*. In Domenech v. National City Bank, 1935, 294 U.S. 199, 204, 55 S.Ct. 366, 369, 79 L.Ed. 857, the Supreme Court said:

> "* * * Puerto Rico, an island possession, like a territory, is an agency of the federal government, having no independent sovereignty comparable to that of a state in virtue of which taxes may be levied. * * *"

Similarly, the District Court in Bradford v. Chase Nat. Bank, D.C.S.D.N.Y.1938, 24 F.Supp. 28, 33, observed:

> "I think it is beyond peradventure that the Philippine Government must be regarded, before the Independence Act, as an agency of the government of the United States."

We agree with the Commissioner that the definition of "agency" in 5 U.S.C.A. § 1001(a), which excludes governments of possessions and territories, is not controlling here. As the Tax Court in the Davis case noted, this definition is specifically limited in its scope to Chapter 19 of the Administrative Procedure Act.

To adopt the construction Petitioner wishes to place upon the term "agency" would appear to disregard the obvious intent of Congress in first enacting 26 U.S.C.A. § 251(a) (which provides exemption from tax on certain incomes) and the later enactment of § 251(j). In Helvering v. Campbell, 4 Cir., 1944, 139 F.2d 865, 867, speaking of Section 251 (along with other cited sections) this court observed:

> "* * * That such an exemption from taxation by the United States was thought necessary by Congress to put citizens of the country trading in our possessions on an equal footing with traders from oth-

er countries, shows conclusively that Congress understood that they were required to pay income taxes into the United States Treasury on their income derived from sources within the possessions."

Section 251(j) was added to clearly remove from the operation of the exemption provisions a person in Bell's position who does not need protection against tax-free competition of traders from other countries.

The decision of the Tax Court is Affirmed.